**Lee MARTIN, Executor of the Estate of Esther S. Martin and Trustee of the Esther S. Martin Living Trust, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**Nos. 90–2060, 90–3339.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 25, 1991.

Decided May 8, 1991.

---

**454**

Scott A. Brainerd, Chicago, Ill., for plaintiff-appellee.

Mark Winer, Dept. of Justice, Tax Div., Washington, D.C., Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., Gary R. Allen, Murray S. Horwitz, Kenneth L. Greene, John A. Dudeck, Jr., Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for the U.S.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

## ON BILL OF COSTS

EASTERBROOK, Circuit Judge.

■ The rules governing the award of costs for the reproduction of briefs were written before word processing and in-house printing became widespread. Fed.R.App.P. 39(c) allows the prevailing party to recover the costs of "producing necessary copies of briefs"; Circuit Rule 39 likewise refers to the costs of "copies". The assumption behind both rules is that a litigant produces an "original" and files "copies". Whether the brief is set in type or simply duplicated, the rules distinguish between the non-recoverable expense of producing the "original" and the taxable cost of producing the "copies".

Word processing blurs the distinction between original and copy. Attorneys compose briefs on a computer. The equipment that produces the drafts and then the original of the final product also makes the copies; the "copies" are "duplicate originals". This is clearly so if the law firm uses the laser printer to generate both drafts and the "copies" filed with the court. It is less clearly so if the laser printer spits out a single original, which the firm duplicates on other equipment. And it is still less clearly so if the firm uses different printers for draft and final versions. Some law firms have equipment that produces a higher-quality image than do the 300 dpi (dots per inch) laser printers that have mushroomed in America's offices. Some of these machines can print and bind the briefs in a single pass. High-resolution (1200 dpi and up) devices and combination printer-binders used to be the sole province of professional print shops. Do these in-house facilities produce only originals, only copies, or some mixture?

■ Let us start with the clearest case. The attorneys compose a brief on their computers and print occasional hard copies to facilitate editing. When they have settled on a text, they send a "final" copy together with a disk to a print shop. The shop transfers the text from the disk to its own equipment and uses the hard copy to verify that the transfer was done correctly. In such a case the costs of the transfer, equivalent to "composition" of type in a traditional process, are recoverable. They are included as part of the cost per page of the completed product. When a law firm possesses dedicated equipment that performs the same function, there is no reason why the expense should be handled differently. If the costs of transferring the image from one machine to another are recoverable when the second machine is owned by an independent firm, then they are recoverable when both machines have common ownership. It would be foolish to promote the farming out of work to print shops when it may well be cheaper—and thus beneficial even to one's adversary—to bring it in house. We read the rules regarding costs to encourage technological progress, *Commercial Credit Equipment Corp. v. Stamps*, 920 F.2d 1361, 1368 (7th Cir.1990), and therefore agree with *Pepsico, Inc. v. Swan, Inc.*, 720 F.2d 746 (2d Cir.1983), that reproduction expenses (including depreciation) comparable to the composition or typesetting charges of a professional printer are taxable as costs. "[E]xpenses of reproduction which are clearly recoverable as costs when a commercial printer is used are also recoverable when incurred through in-house methods." 720 F.2d at 747. Of course the charges for in-house reproduction may not exceed the charges of an outside print shop, but subject to this cap the firm may recover the full costs of reproduction.

Things become more difficult when attorneys use the same equipment to compose the briefs, print drafts for internal circulation, and print copies for filing. Then recovery of the costs of "composition" underwrites the expense of producing the "original" as well as the cost of turning the original into a brief. Two courts of appeals have held that the expense of composing an original may not be recovered indirectly through a charge for "copies". *CTS Corp. v. Piher International Corp.*, 754 F.2d 972 (Fed.Cir.1984); *Intercontinental Apparel, Inc. v. Danik, Inc.*, 777 F.2d 775 (D.C.Cir. 1985).

■ In the world before word processing, Rule 39 allowed the prevailing party to recover only the marginal cost of turning a typescript into a document that could be filed with the court. It could not recover the expenses of typewriters and secretaries, although it could recover the costs of making photocopies or printing. Word processing yields joint costs, which cannot be allocated in any simple fashion. To decline to apportion these costs may give lawyers an incentive to send their products out for professional printing, even though that is more costly than in-house reproduction. Yet to try to allocate these costs could produce an administrative nightmare. Rule 39 might be amended to provide for some arbitrary allocation of the costs of word processing equipment between producing the originals and producing the "copies", but this change must proceed through the stages of notice and comment. We agree with *CTS* and *Intercontinental Apparel* that under the rules currently in force only the marginal costs of reproduction may be taxed against one's adversary. Under the existing rules a firm may not recover any portion of the costs of providing its lawyers and secretaries with word processors. It may recover only the additional cost of reproduction: the expense of copying, and of dedicated equipment (such as 1200 dpi printer-binders) that makes copies but not originals.

The bill of costs that the Department of Justice submitted in this case seeks $412.20 for "composing and duplicating" the government's briefs and appendix. One attachment to the bill, from the Administrative Officer of the Tax Division, certifies that the "composing charge" is $2.60 per page, for a total of $340.60. A second attachment, from the Director of the Justice Publications Services Facility, certifies that the cost of duplicating the documents

is 4¢ per page per copy, for a total of $71.60. The $71.60 is allowable. We cannot tell, however, whether the $2.60 per page represents the cost of using separate equipment comparable to that in a print shop, in which case it is recoverable, or is an attempt to amortize some of the costs of the word processing equipment that the staff of the Tax Division uses to write and edit the brief. The meaning of the "composing charge" is especially murky because the Department seeks to recover the same $2.60 per page for the text of the brief and for the appendix, although the latter is nothing but photo-duplication of documents such as the district court's opinions. An identical charge for every page implies that the cost covers setting up a duplicating machine after hard copy has been produced (taxable as costs), rather than a fee for generating that copy on word processing equipment (not taxable, under the approach we take).

We shall defer acting on the bill of costs until receiving clarification from the Department of Justice about the meaning of the "composing charge".