**GASH ASSOCIATES, Plaintiff–Appellant,**

v.

**VILLAGE OF ROSEMONT, ILLINOIS, Defendant–Appellee.**

No. 92–3481.

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1993.

Decided June 8, 1993.

Rehearing and Rehearing En Banc Denied July 7, 1993.

Gary L. Starkman (argued), Steven B. Rissman, Ross & Hardies, Chicago, IL, for plaintiff-appellant.

Arthur N. Christie (argued), William E. Ryan, Burke & Ryan, Chicago, IL, for defendant-appellee.

Before EASTERBROOK and ROVNER, Circuit Judges, and WILLIAMS, Senior District Judge.*

EASTERBROOK, Circuit Judge.

A partnership called GASH Associates owned an office building in Rosemont, Illinois. The building was encumbered by three mortgages. GASH created a fourth when it sold the building, taking the buyer's non-recourse note. The buyer did not pay, and GASH decided to foreclose on its interest. This led to a sale at auction, which realized $4,005,000, not enough to pay off the senior lenders, to which GASH owed almost $6 million. GASH was stuck with a hefty deficiency judgment. The senior lenders asked the court to confirm the sale. It did, over GASH's vigorous objection. *Lyons Savings & Loan Ass'n v. GASH Associates*, 189 Ill. App.3d 684, 136 Ill.Dec. 888, 545 N.E.2d 412 (1st Dist.1989), leave to appeal denied, 129 Ill.2d 564, 140 Ill.Dec. 672, 550 N.E.2d 557 (1990). See also *Superior Bank fsb v. Golding*, 152 Ill.2d 480, 178 Ill.Dec. 720, 605 N.E.2d 514 (1992) (discussing the partners' efforts to avoid paying GASH's debts).

Dissatisfied with the outcome in state court, GASH commenced this action in federal court under 42 U.S.C. § 1983 against the Village of Rosemont, the winning bidder. GASH believes that Rosemont winkled it out of full value for the property by commencing a condemnation action in state court while the foreclosure action was pending, thus "taking" its property. It styled this as an inverse condemnation action. By tendering only $3.8 million in the condemnation action, Rosemont scared away rival bidders, GASH believes. Anyone outbidding Rosemont faced a risk that it would have to surrender the building to the Village for less than it paid; that prospect depressed the price below what GASH says is the fair market price of the building, some $5.8 million. Rosemont replied that any condemnation action may discourage other potential buyers, and the process cannot itself be a "taking"; nothing is special about condemnation while the owner prefers to sell at auction. The Village contended that it cannot be liable for "taking" what it bought in the market, and cannot be required to pay more than the high bid in a competitive auction. Rosemont insists that its bid did nothing but drive up the price at the auction. Had it remained on the sidelines, someone else would have bought for less than $4 million, and GASH's deficiency judgment would have been greater. GASH or a third party could have topped the $4 million bid had it believed that the condemnation action would lead to a higher award. The district court accepted Rosemont's arguments and dismissed the action under Fed.R.Civ.P. 12(b)(6).

Dominating this case is a simple fact: GASH objects to the outcome of a judicial proceeding and filed a separate suit to get around it. This runs headlong into *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), which hold that carrying out a judicial decision does not independently violate the Constitution. See also *In re Chicago, Milwaukee, St. Paul & Pacific Ry.*, 799 F.2d 317, 324–28 (7th Cir.1986) (judicial valuation of property sold at auction, even if grossly erroneous, is not a taking). Litigants cannot file collateral attacks on civil judgments; instead they must seek review in the Supreme Court. The *Rooker–Feldman* doctrine creates a jurisdictional obstacle to collateral review, one we must respect even if the parties do not present the issue for decision.

Rosemont invoked the *Rooker–Feldman* doctrine in the district court. Judge Nordberg, presiding in the case before its transfer to Judge Andersen, concluded that this doc-

* Hon. Spencer Williams, of the Northern District of California, sitting by designation.

trine is coterminous with principles of claim preclusion (res judicata). Because Illinois would allow litigation in its own courts raising the possibility that a judicially-approved sale is a taking, Judge Nordberg concluded, the litigation may proceed in federal court. Both sides appear to accept this disposition, for neither mentioned it in the appellate briefs.

Equating the *Rooker–Feldman* doctrine with preclusion is natural; both sets of principles define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires the federal court to give the judgment the same effect as the rendering state would. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). When the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not. *Harris Trust & Savings Bank v. Ellis,* 810 F.2d 700, 704–06 (7th Cir.1987). The *Rooker–Feldman* doctrine, by contrast, has nothing to do with § 1738. It rests on the principle that district courts have only original jurisdiction; the full appellate jurisdiction over judgments of state courts in civil cases lies in the Supreme Court of the United States, and parties have only a short time to invoke that jurisdiction. The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. See also David P. Currie, *Res Judicata: The Neglected Defense,* 45 U.Chi.L.Rev. 317, 321–25 (1977) (elaborating the difference between *Rooker* and preclusion).

Three of our recent cases illustrate the dividing line. Plaintiff in *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589 (7th Cir. 1992), contended that the decision of the Supreme Court suspending her from the practice of law violated the Constitution, and that the ethical rules on which that suspension was based were independently unconstitutional and should be enjoined lest they be applied to her future conduct. The former claim explicitly sought review of the state court's decision and was, we held, barred by the *Rooker–Feldman* doctrine. The latter did not depend on invalidation of the suspension and therefore, one might suppose, was in the realm of § 1738, but, because only the suspension gave the attorney standing to challenge the rules, was so intertwined with the judgment that it, too, lay outside federal jurisdiction. By contrast, *Greening v. Moran,* 953 F.2d 301 (7th Cir.1992), used principles of preclusion to resolve a challenge to a state's system of collecting fees from the legal profession. Greening had been suspended from practice because he refused to remit annual dues to the agency selected by the state court, and he had been convicted of contempt for practicing after the suspension. He asked for relief permitting him to practice without paying the dues; this, we concluded, was barred by the preclusive force of the contempt proceeding, where such arguments were (or could have been) made. Finally, consider *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993). A county sold a parcel of land at auction to recover $84.43 in unpaid taxes. The sale was approved by a state court. Complaining of irregularities in the notice and approval, the prior owners commenced a federal suit under § 1983. We held that the *Rooker–Feldman* doctrine barred the litigation, because the plaintiffs' injury stemmed from the state judgment—an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless. State law permitted the former owners to open a collateral attack on the judgment confirming the sale; indeed they had done so. *Id.* at 755. Thus § 1738 did not interdict sequential litigation. Still, we held, there was no jurisdiction to wage that collateral attack in federal court.

As we see things, GASH is attacking the judgment itself. It believes that the sale should not have been confirmed at such a low price and wants the buyer to pay more. Just

as in *Ritter*, it has no claim independent of the state court's adverse decision. To put this differently, the injury of which GASH complains was caused *by* the judgment, just as in *Rooker, Feldman,* and *Ritter*. GASH did not suffer an injury out of court and then fail to get relief from state court; its injury came from the judgment confirming the sale, rather than requiring the Village to condemn the building independently of the foreclosure, as GASH had demanded. Both trial and appellate courts in Illinois considered and rejected this position on the merits. The appellate court expressly rebuffed GASH's contention that the pending condemnation action unduly depressed the price realized in the auction. Only the Supreme Court of the United States was authorized to review that decision. Because GASH complains about the judgment entered by a state court, the district court lacked jurisdiction. The judgment is vacated, and the case is remanded with instructions to dismiss for want of jurisdiction.