Sasha LONG, an individual, Plaintiff–Appellant,

v.

SHOREBANK DEVELOPMENT CORPORATION, f/k/a City Lands Corporation, a Delaware Corporation, South Shore Associates, an Illinois Limited Partnership, Sanford Kahn, LTD., an Illinois Corporation, Sanford Kahn, an individual, and Eileen S. Kahn, an individual, Defendants–Appellees.

No. 98–1564.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1998.

Decided June 25, 1999.

Michael K. Fridkin, Matthew J. O'Hara (argued), Sachnoff & Weaver, Chicago, IL, for Plaintiff–Appellant.

Alvin ·R. Becker (argued), John K. Kallman, Chicago, IL, for Defendants–Appellees.

Before CUMMINGS,* KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Sasha Long filed suit for damages against defendants Shorebank Development Corporation ("Shorebank"), South Shore Associates ("South Shore"), Eileen Kahn, Sanford Kahn, and Sanford Kahn, Ltd. (collectively the "Kahns"), for unlawfully evicting her from her home in violation of various federal and state laws. Long contends that the defendants unlawfully evicted her by filing a complaint against her to collect a rental debt they knew did not exist, using fraud to keep her from going to court to contest the baseless eviction complaint, and knowingly misrepresenting to the court that she did not dispute the eviction. The Kahns filed a motion to dismiss. The district court granted this motion, concluding that the *Rooker–Feldman* doctrine precluded the court from exercising subject matter jurisdiction over Long's claims with respect to the Kahns. The district court ·dismissed *sua sponte* the remaining claims against the remaining defendants, relying on the same rationale. Long now appeals this

---

* The Honorable Walter J. Cummings participated in oral argument and consideration of this case; however, he died on April 24, 1999.

decision. We reverse the decision and remand the case for further proceedings.

## I. HISTORY

The facts alleged in Long's complaint detail a series of events that culminated in the loss of all of Long's personal possessions, her job, and custody of her daughter. As if these indignities were not enough, Long remained homeless for a period of six months after her encounter with the defendants in this case.

Long's plight began in 1992 when she entered into a lease agreement for an apartment in Chicago with Shorebank, which operated as an agent of South Shore. The Department of Housing and Urban Development subsidized all but three dollars of Long's rent payments to Shorebank. In January 1997, Long received a notice from Shorebank alleging a small deficiency in her rent payments. Upon receiving this notice, Long immediately contacted Shorebank in an effort to demonstrate that she was current in her rent. A Shorebank employee with whom Long spoke apparently confirmed that no evidence of a delinquency with respect to her account existed and promised to conduct a rent analysis for Long in order to determine her payment status. After performing this analysis, a Shorebank employee again assured Long that she did not owe any rent for the period listed in the notice.

Despite the results of the rent analysis, Shorebank served Long with a summons and eviction complaint alleging nonpayment of rent in the amount of $54.61 for the period running from September 1996 through January 1997. Sanford Kahn, counsel. for Shorebank, signed the complaint, which required Long to appear in the Municipal Department of the Circuit Court of Cook County ("Circuit Court") on the afternoon of February 21, 1997. On that date, Long arrived at the designated courtroom minutes prior to the scheduled time of her appearance without the benefit of counsel. Prior to entering the courtroom, Eileen Kahn, also counsel for Shorebank and the wife of Sanford Kahn, approached Long to discuss the case with her.

At the outset of their conversation, Eileen Kahn allegedly acknowledged the inaccuracy of the complaint lodged against Long. Kahn informed Long that Shorebank would allow her two weeks to resolve the dispute by working directly with Shorebank before it pursued any adverse action against her. To obtain the two-week period, Kahn explained to Long that she needed to sign a document prepared by Kahn that would postpone the case from proceeding in Circuit Court and would preclude Shorebank from taking any action to obtain a judgment. However, quite the opposite from Kahn's representations, the document she induced Long to sign was in fact a consent to the entry of final judgment on that day, vesting unconditional possession of Long's apartment in Shorebank. The judgment also unconditionally awarded Shorebank damages in the amount of $54.61.

Relying upon Kahn's misrepresentations and also upon Kahn's status as an attorney, Long accepted Kahn's proffer that the legal document merely postponed the hearing in the case scheduled for that day and signed the document. Kahn then instructed Long that her signature on the document eliminated any need for her to appear in court. Consequently, Long believed she could immediately begin to negotiate with Shorebank to arrive at a resolution of the dispute.

After her exchange with Long, Eileen Kahn appeared *ex parte* in the case against Long in Circuit Court as counsel for Shorebank. Despite the fact that Kahn knew Long contested Shorebank's complaint against her, Kahn allegedly told the Circuit Court that no dispute existed between Shorebank and Long and that Long agreed to surrender possession of the apartment and pay a money judgment to Shorebank. Accordingly, the Circuit

Court entered judgment for possession and damages in the amount of $54.61 against Long.

Because Long had no knowledge of the *ex parte* proceedings before the Circuit Court, Long believed she had secured a two-week period of time within which to rectify Shorebank's error. Accordingly, Long went to Shorebank's offices armed with proof of rent payments. During a meeting with a Shorebank employee, Shorebank informed Long that her deficiency amounted to fifteen dollars. Shorebank offered to terminate the pending eviction suit if Long agreed to pay this deficiency and Shorebank's legal fees and costs for having filed the suit. In an effort to head off further legal proceedings, Long agreed to the terms offered by Shorebank and signed an installment agreement to pay Shorebank's costs and legal fees.

In April 1997, Long received a notice from the Cook County Sheriff's Department informing her of the eviction judgment that had been procured by Eileen Kahn. The notice informed her that she would be evicted the following day. Long immediately went to Shorebank to seek a delay of the eviction. Consistent with its previous displays of cavalier conduct, Shorebank refused to postpone the execution of the eviction. On April 18, 1997, deputy sheriffs executed the eviction notice and literally placed Long, her daughter, and all of their possessions onto the street. It comes as no surprise that all of Long's personal possessions were either stolen or destroyed, and Long was forced to surrender custody of her daughter because she was now homeless. To add insult to her injuries, Long's repeated attempts to resolve this matter with Shorebank resulted in excessive absences from her job and ultimately led to her being fired. Long remained homeless for six months.

After the eviction, Shorebank provided Long with a "Move–Out Analysis." In this analysis, Shorebank acknowledged that Long did not owe any rent payments for the period covered by the eviction complaint and that, ironically, Long was actually due a credit for this period.

Long filed suit in federal district court charging the defendants with violating several provisions of the Fair Debt Collection Practices Act ("FDCPA"); the Illinois Consumer Fraud and Deceptive Business Practices Act; and the Chicago Landlord Tenant Ordinance; with violating her rights under the Fifth and Fourteenth Amendments; and with breach of contract and common law fraud. According to her complaint, Long does not seek repossession of the apartment or a reversal of the eviction judgment. Rather, Long seeks only damages for having been rendered homeless and jobless and for the loss of custody of her daughter as a result of the wrongful and fraudulent eviction perpetrated by Shorebank and its attorneys.

The Kahns filed a motion to dismiss Long's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After considering the Kahns' motion, the district court concluded that the *Rooker–Feldman* doctrine precluded the court from exercising subject matter jurisdiction over Long's complaint. In reaching this conclusion, the district court observed that the gravamen of Long's claims against the defendants was the allegation that the Kahns and Shorebank fraudulently obtained the Circuit Court judgment. For this reason, the district court explained that the source of Long's injury was inextricably intertwined with and ultimately the result of the Circuit Court judgment. The district court determined that it would inevitably be required to determine whether the substance of this judgment was correct in order to address the merits of Long's complaint. Because the *Rooker–Feldman* doctrine precludes federal courts from engaging in appellate review of state court decisions or from considering collateral attacks on state court civil judgments, the district court dismissed Long's complaint with respect to the Kahns pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of jurisdiction.

The district court proceeded to dismiss *sua sponte* the remaining counts of Long's complaint against the remaining defendants based on the same reasoning.

After the district court dismissed Long's claims, Long immediately filed an identical suit for damages in an Illinois Circuit Court. In that case, the defendants also filed a motion to dismiss Long's complaint, asserting, in part, that the suit could only be brought before the original judge who signed the eviction order. The state court rejected this argument and denied the relevant portion of the defendants' motion to dismiss. In reaching this outcome, the court concluded that Long's complaint demonstrated that the defendants engaged in "fraud that actually prevented Long from participating in trial and circumvented a trial on the merits of her eviction." Accordingly, the court concluded that Long was properly before the court "because a void judgment may be attacked at any time, in any court, either directly or collaterally."

## II. ANALYSIS

As we shall see, the district court in this case was presented with very difficult and close questions of law. The defendants in this case contend that the district court properly dismissed Long's suit for two reasons. The defendants first assert that the district court correctly dismissed Long's suit for lack of subject matter jurisdiction based on the *Rooker–Feldman* doctrine. Alternatively, the defendants argue that even if the district court could exercise subject matter jurisdiction over Long's complaint, the principle of *res judicata* prevents the district court from addressing her claims.

### A. Standard of Review

■ When reviewing a dismissal for lack of subject matter jurisdiction, we note that a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Rueth v. United States EPA*, 13

F.3d 227, 229 (7th Cir.1993). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993) (per curiam) (quoting *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979)). We review a district court's dismissal of an action under Rule 12(b)(1) *de novo*. *See Selbe v. United States*, 130 F.3d 1265, 1266 (7th Cir.1997).

### B. The Applicability of the *Rooker–Feldman* Doctrine

■ Under the *Rooker–Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations. *See Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 ("By failing to raise his claims in state court a plaintiff may forfeit his right to obtain review of the state-court decision in any federal court."). *Rooker–Feldman*, therefore, requires a party seeking review of a state court judgment or presenting a claim that a state judicial proceeding has violated their constitutional rights to pursue relief through the state court system and ultimately to the Supreme Court. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701–02 (7th Cir. 1998). The doctrine stems, in part, from recognition of the fact that "a decision by a state court, however erroneous, is not itself a violation of the Constitution actionable in federal court." *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995). Because the *Rooker–Feldman* doctrine is jurisdictional in nature, its applicability

must be determined before considering the defendants' arguments regarding the applicability of *res judicata*. *See Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir.1996) ("Where *Rooker–Feldman* applies, lower federal courts have no power to address other affirmative defenses, including res judicata.").

■■■ In assessing the applicability of the *Rooker–Feldman* doctrine in a particular case, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* "If the injury alleged resulted from the state court judgment itself, the *Rooker–Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Centres*, 148 F.3d at 702 (footnote omitted). "By contrast, if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker–Feldman* doctrine does not apply, although the doctrines of claim and issue preclusion may be applicable." *Id.* The pivotal inquiry is "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 510 (7th Cir.1996); *see also GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir.1993). In this regard, we have recognized a distinction between "a federal claim alleging injury caused by a state court judgment" and "a federal claim alleging a prior injury that a state court failed to remedy." *Centres*, 148 F.3d at 702. A federal court is precluded from considering the former, but not the latter, under the *Rooker–Feldman* doctrine.

The district court based its conclusion that the *Rooker–Feldman* doctrine precluded it from exercising subject matter jurisdiction over Long's claims on its belief that the injury asserted by Long was ultimately the result of defendants' fraudulent procurement of the Circuit Court judgment in her eviction proceeding. The district court determined that any injury stemming from the defendants' alleged conduct was complete only when the Circuit Court entered the agreed order for possession and damages in favor of Shorebank. In the court's view, such an injury could only be considered an injury at the hands of the Circuit Court, precisely the type of injury the *Rooker–Feldman* doctrine forbids lower federal courts from addressing.

While it is often difficult to distinguish whether the injury alleged by a federal plaintiff resulted from the state court judgment itself or is distinct from that judgment, *see Young v. Murphy*, 90 F.3d 1225, 1231 (7th Cir.1996), we must ask whether the injuries of which Long complains are independent of the Circuit Court judgment. Long alleged four counts in her complaint which would invoke the subject matter jurisdiction of the district court. Long contends that the defendants violated three provisions of the FDCPA and that the defendants deprived her of property without due process in violation of 42 U.S.C. § 1983.

■■■ The counts in Long's complaint alleging violations of the FDCPA are independent from the eviction, order and, therefore, *Rooker–Feldman* does not apply to these claims. This conclusion is supported by our decision in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir.1995). After losing his breach of contract suit in state court, the plaintiff in *Nesses* filed suit in federal court under § 1983 alleging a far-reaching conspiracy between the opposing party's lawyers and the judges at the different stages of the state court litigation, in which the lawyers allegedly used their political clout to turn the state court judges against his cause. In concluding that the *Rooker–Feldman* doctrine did not preclude the district court from exercising jurisdiction over his case, we explained that the fact that the plaintiff's pursuit of his federal claims could ultimately show

that the state court judgment was erroneous did not automatically render *Rooker–Feldman* applicable:

> To show harm and thus keep the present suit alive, [the plaintiff] would have to show that the decision by the [state court] in his suit for breach of contract was erroneous, and that, it may appear, *Rooker–Feldman* bars him from doing. But the doctrine is not that broad. Were [the plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker–Feldman* doctrine, sue to vindicate this right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did harm him.

*Id.* at 1005; *see also GASH*, 995 F.2d at 728 ("The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state court judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?").

Like the plaintiff in *Nesses*, the propriety of the Circuit Court judgment is not directly at issue with respect to the violations of the FDCPA Long asserts. For example, Count I of Long's complaint states that the defendants' conduct violated 15 U.S.C. § 1692e, in part, because the defendants falsely represented the character, amount, and legal status of the debt Long allegedly owed Shorebank by presenting Long with a notice and serving her with a complaint stating she owed Shorebank money—a fact they knew to be untrue. Section 1692e provides that "the following conduct *is a violation* of this section: ... [t]he false representation of

... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A) (emphasis added). The violation of the FDCPA alleged by Long in Count I (as well as the violations of § 1692f and § 1692g alleged in Counts II and III) was independent of and complete prior to the entry of the eviction order. It makes no difference that Long may also deny the correctness of the eviction order in pursuing these claims.

By contrast, it does not seem that Long's due process argument can be considered separate from the eviction order entered against her. For if the proceedings in the Circuit Court resulted in her favor (although it is hard to see how this could have happened given the nature of the deck stacked against her), it seems unlikely that she would have been evicted or lost all of her possessions, custody of her daughter, and her job. In essence, she would not have been deprived of her property as she complains. Even Long states in her complaint that Shorebank and South Shore deprived her of her property (the leased premises) by initiating and prosecuting a baseless lawsuit and by deceiving her into waiving a valid and meritorious defense. For these reasons, Long's pursuit of her due process claim bears a close resemblance to cases in which we have found the *Rooker–Feldman* doctrine to apply: *Garry, GASH*, and *Ritter v. Ross*, 992 F.2d 750 (7th Cir.1993).

In *Garry*, the plaintiffs were an owner and lessor of a parcel of property that the local government condemned pursuant to a state court order. The plaintiffs believed the condemnation of the land constituted unconstitutional political retaliation by local government officials triggered by the plaintiffs' support of certain candidates in a local election. The plaintiffs initiated a lawsuit under 42 U.S.C. § 1983, claiming that the defendants violated the First and Fourteenth Amendments by unlawfully causing their property to be condemned due to their political views. The complaint sought monetary damages and both a pre-

liminary and permanent injunction against further use of this property by the defendants. *Garry*, 82 F.3d at 1363–64. We concluded that *Rooker–Feldman* precluded the district court from exercising jurisdiction over the plaintiffs' claims because "the injury alleged was only complete when the state court actually condemned the property." *Id.* at 1368–69.

We reached a similar conclusion in *GASH*. In that case, the plaintiff, a real estate partnership forced to foreclose on its interest in a piece of commercial property, filed a federal civil rights suit against the winning bidder at the foreclosure sale. The partnership claimed that its interest in the property was unconstitutionally "taken" when the winning bidder commenced a condemnation proceeding in state court against the property at issue during the pendency of the foreclosure action. The result of the timing of the condemnation proceeding supposedly depressed the price for the property ultimately obtained by the winning bidder at the foreclosure sale. *GASH*, 995 F.2d at 727. We concluded that *Rooker–Feldman* applied in this case because the partnership's suit was directed at the state court judgment confirming the foreclosure sale and designed to get around it. We reached this conclusion based on the origin of the partnership's injury—"[the partnership] did not suffer an injury out of court and then fail to get relief from state court; [the] injury came from the judgment [itself]." *Id.* at 729.

Finally, in *Ritter*, we concluded that the application of the *Rooker–Feldman* doctrine precluded the district court from exercising jurisdiction over a claim that a county deprived the plaintiffs of their property without due process by selling a parcel of the plaintiffs' land at auction to recover unpaid taxes with state court approval. The plaintiffs complained of irregularities in the notice and approval of the sale and commenced an action pursuant to § 1983. *Ritter*, 992 F.2d at 751–52. We found *Rooker–Feldman* applicable because "[t]he state court proceedings . . . are the

subject of [the] case. . . . [T]heir claims against Defendants are inextricably intertwined with the merits of that proceeding." *Id.* at 754–55 (quotation marks and citation omitted).

Consistent with the foregoing cases, Long's claim that the defendants deprived her of her property without due process stems directly from the Circuit Court eviction order entered against her. In other words, while Long complains that the defendants deprived her of her property without due process in initiating and pursuing the eviction action, the injuries she alleges were complete only when the Circuit Court entered the eviction order against her. Absent the eviction order, Long would not have suffered the injuries for which she now seeks to be compensated. And, to prevail on her claims, she would inevitably be forced to challenge the validity of this order. As we explained in *Ritter*, a litigant may not attempt to circumvent the effect of *Rooker–Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action. *See Ritter*, 992 F.2d at 754.

Notwithstanding these determinations regarding Long's § 1983 claim (and even her FDCPA claims for that matter), we conclude that one critical distinction between cases in which we have found *Rooker–Feldman* to be applicable and the present case exists rendering *Rooker–Feldman* inapplicable to the claims contained in Long's complaint. In the proceedings before the state court that ultimately culminated in her eviction, Long was effectively precluded from raising the claims she presented in her suit before the district court. Thus, we cannot say that her claims are bound up with the eviction order.

Because the *Rooker–Feldman* doctrine extends beyond issues actually raised in state court to issues that are inextricably intertwined with such issues, a plaintiff "failing to raise his claims in state court may forfeit his right to obtain review of the state court decision in any federal

court." *Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303. Nevertheless, an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings. Absent such an opportunity, it is impossible to conclude that the issue was inextricably intertwined with the state court judgment. This limitation on the applicability of *Rooker–Feldman* was first set forth in *Wood v. Orange County*, 715 F.2d 1543, 1547 (11th Cir. 1983):

> The [*Rooker–Feldman* doctrine] can apply only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings. Where the plaintiff has had no such opportunity, he cannot fairly be said to have "failed" to raise the issue. Moreover, an issue that a plaintiff had no reasonable opportunity to raise cannot properly be regarded as part of the state case. In *Feldman's* language, the issue that such a plaintiff asks the federal court to decide is not "inextricably intertwined" with the state court's judgment. As a result, the federal district court's jurisdiction does not trench on the exclusive authority of the Supreme Court to review state court decisions for errors of federal law.... Finally, interpreting *Rooker* to preclude a federal district court from considering an issue that the plaintiff had no reasonable opportunity to raise in state court might pose due process problems. Such a harsh rule might deprive the plaintiff from any forum, state or federal, where he has a reasonable opportunity to present his federal constitutional claims, a result arguably contrary to the requirements of due process.

Critical to an evaluation of Long's argument, therefore, is what constitutes a "reasonable opportunity" to raise a particular claim in state proceedings. It is not enough for Long to say that because she was kept away from the Circuit Court eviction proceeding by the defendants' chicanery, she was denied a reasonable op-

portunity to raise her claims before the Circuit Court. In cases in which the applicability of the *Rooker–Feldman* doctrine has been rejected based on the reasoning set forth in *Wood*, the federal litigants have pointed to some factor independent of the actions of the opposing party that precluded the litigants from raising their federal claims during the state court proceedings. Typically, either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court.

This point is aptly illustrated by our decision in *Lynk v. LaPorte Superior Court*, 789 F.2d 554 (7th Cir.1986). *Lynk* involved a civil rights suit brought by a state prisoner seeking dissolution of his marriage after the state court denied his petition for a divorce. During the course of the state proceedings, the state judge to whom the divorce proceeding was assigned scheduled a hearing, but refused to grant the plaintiff's writ of habeas corpus ad testificandum that would have permitted the plaintiff to appear at the hearing. The plaintiff then moved for a judgment on the pleadings, but the court denied this motion without any statement of reasons. Unable to appeal this decision, the plaintiff petitioned the Indiana Supreme Court to mandamus the judge to allow him to appear for the hearing. This petition and his petition for writ of certiorari to the U.S. Supreme Court were also denied. The plaintiff filed his federal suit asserting that the Indiana statute, as interpreted to prevent him from obtaining a divorce because he was in prison, violated his rights under the equal protection clause of the Fourteenth Amendment. *Lynk*, 789 F.2d at 557–58. We concluded that the *Rooker–Feldman* doctrine did not preclude him from pursuing this claim in federal court because there was no showing that the plaintiff "ever had a realistic opportunity to raise his federal grounds in state court." *Id.* at 565. This conclusion followed from the fact that "[w]hen he filed his divorce suit

he had no reason to think that he had to mount a federal challenge to Indiana's procedures for divorce, for he had no reason to believe that those procedures would prove a serious obstacle to getting the divorce." *Id.*

Other courts have relied on similar reasoning in determining that state court procedures have prevented litigants from having a reasonable opportunity to raise certain claims during state proceedings. *See, e.g., Biddulph v. Mortham,* 89 F.3d 1491, 1495 n. 1 (11th Cir.1996) (concluding that state court denial of mandamus relief on the same claims raised by plaintiff precluded applicability of *Rooker–Feldman* doctrine because plaintiff did not have a reasonable opportunity to raise his federal claim in the mandamus proceeding); *Robinson v. Ariyoshi,* 753 F.2d 1468, 1472–73 (9th Cir.1985) (concluding that *Rooker–Feldman* was inapplicable to plaintiff's federal claims because the Hawaii Supreme Court refused to consider these claims during the plaintiff's state court proceedings), *vacated on other grounds,* 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986).

 All is not lost for Long, however. Although we do not believe she may rely on the deception of her opponents to demonstrate that she was not afforded a reasonable opportunity to raise her federal claims, the fact that Illinois law would have effectively precluded her from raising these claims is sufficient to establish that *Rooker–Feldman* does not prevent the district court from exercising jurisdiction over her claims.

 The defendants in the present case sought to evict Long by instituting a forcible entry and detainer action against her. Under Illinois law, "[a] forcible entry and detainer proceeding is a summary statutory action to adjudicate possession rights and should not be burdened by other matters unrelated to the issue of possession." *People ex rel. Dep't of Trans. v. Walliser,* 258 Ill.App.3d 782, 196 Ill.Dec.

345, 629 N.E.2d 1189, 1194 (1994); *see also Miller v. Daley,* 131 Ill.App.3d 959, 87 Ill.Dec. 51, 476 N.E.2d 753, 754 (1985) ("The distinct purpose of the forcible entry and detainer proceeding is to determine only who should be in rightful possession."). Claims that are not germane to the issue of possession may not be pursued in a forcible entry and detainer proceeding. *See* 735 Ill. Comp. Stat. Ann. § 5/9–106 ("[N]o matters not germane to the distinctive purpose of the [forcible entry and detainer] proceeding shall be introduced by joinder, counterclaim or otherwise."); *see also Rosewood Corp. v. Fisher,* 46 Ill.2d 249, 263 N.E.2d 833, 837 (1970) ("[M]atters germane to the distinctive purpose of the [forcible entry and detainer] action may be introduced by a defendant by way of a counterclaim or otherwise . . . ."). "Counterclaims seeking money damages are not germane to forcible entry claims." *American Nat'l Bank v. Powell,* 293 Ill.App.3d 1033, 229 Ill.Dec. 439, 691 N.E.2d 1162, 1170 (1997); *see also Sawyier v. Young,* 198 Ill.App.3d 1047, 145 Ill. Dec. 141, 556 N.E.2d 759, 763 (1990).

In her complaint before the district court, Long raised claims under two federal statutes that provide a basis for the exercise of subject matter jurisdiction by the district court. These claims included alleged violations of the FDCPA and a claim alleging a deprivation of due process under § 1983. Long sought monetary damages for each of the claims brought under these statutes. While it is arguable that these claims may touch upon issues of possession, they do so only tangentially. The claims are more than mere affirmative defenses, as the defendants suggest, and encompass much more than the right of possession. For example, the FDCPA addresses the collection of debts and provides for damages and attorney's fees in certain situations, irrespective of whether possession may also be at issue in a complaint asserting FDCPA claims. Moreover, there has been absolutely no showing that a defendant has ever asserted the rights provided for in the FDCPA as an

affirmative defense or brought a counterclaim under this statute in a forcible entry and detainer action in Illinois. It is likely that Long's claims for damages under the FDCPA and § 1983 would not have been considered germane to the forcible entry and detainer action brought by defendants. *See Powell*, 229 Ill.Dec. 439, 691 N.E.2d at 1170 ("While his affirmative defense and both counts of his counterclaim were germane, Powell asked for monetary damages, attorneys fees, and costs. Counterclaims seeking monetary damages are not germane to forcible entry claims."); *Great American Fed. Savings and Loan Ass'n v. Grivas*, 137 Ill.App.3d 267, 91 Ill.Dec. 870, 484 N.E.2d 429, 435 (1985) ("[T]he remaining count of defendant's counterclaim sought damages for plaintiff's alleged fraud and deceit. Hence, the remaining issues do not concern the issue of possession."). This conclusion is bolstered by the fact that in the subsequent state suit filed by Long after the district court dismissed her federal complaint, the Circuit Court determined that Long's claims for damages would not have been germane to possession, and, therefore, she could not have presented them before the Circuit Court.

Because Long's claims could not have been presented before the Circuit Court during the forcible entry and detainer proceedings, Long did not have a reasonable opportunity to raise her claims in state court, and, therefore, those claims are not inextricably intertwined with the Circuit Court's judgment. Accordingly, we conclude that the *Rooker–Feldman* doctrine is not applicable.

### C. The Applicability of *Res Judicata*

██ Apart from *Rooker–Feldman*, the defendants assert that *res judicata* creates a separate obstacle for Long to overcome. Although the issue of the applicability of *res judicata* was not addressed by the district court, we may affirm the district court on any ground supported by the record. *See Centres*, 148 F.3d at 703.

██ In contrast to the *Rooker–Feldman* doctrine, *res judicata* does not concern itself with the determination of whether a district court may properly exercise subject matter jurisdiction in a particular case. Rather, *res judicata* constitutes an affirmative defense and is dependant upon the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires federal courts to give a state court judgment the same preclusive effect it would have in state court. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). "When the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not." *GASH*, 995 F.2d at 728. Because an Illinois state court rendered the eviction order at issue, we must apply Illinois law to determine whether *res judicata* bars Long's claims. *See Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955 (7th Cir. 1997).

██ Under Illinois law, the doctrine of *res judicata* holds that "a final judgment on the merits is conclusive as to the rights of the parties, and constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Zabel v. Cohn*, 283 Ill.App.3d 1043, 219 Ill.Dec. 199, 670 N.E.2d 877, 880 (1996). However, Illinois law provides that *res judicata* is not applicable when a judgment is void. *See Ottwell v. Ottwell*, 167 Ill.App.3d 901, 118 Ill.Dec. 873, 522 N.E.2d 328, 333 (1988); *see also Allcock v. Allcock*, 107 Ill.App.3d 150, 62 Ill.Dec. 865, 437 N.E.2d 392, 394 (1982) ("[T]he *res judicata* consequences will not be applied where the judgment is void.").

The Circuit Court before which Long's state court complaint against the defendants is pending refused to afford the eviction order preclusive effect. Under the Full Faith and Credit Statute, the Circuit Court's refusal to apply *res judicata* to the eviction order should end our inquiry be-

cause this statute requires federal courts to give state court judgments the same effect the rendering state would. For the sake of completeness, we will review the basis of this decision.

 Illinois law distinguishes between judgments that are void and those judgments that are merely voidable. A void judgment, "that is, one entered by a court which lacks jurisdiction over the parties, the subject matter, or lacks inherent power to enter the particular judgment, or an order procured by fraud, can be attacked at any time, in any court, either directly or collaterally, provided that the party is properly before the court." *People ex rel. Brzica v. Village of Lake Barrington*, 268 Ill.App.3d 420, 205 Ill.Dec. 850, 644 N.E.2d 66, 69–70 (1994). By contrast, an attempt to set aside a voidable judgment—one procured through fraud after the court has already acquired subject matter jurisdiction—must be direct. *See Orrway Motor Serv., Inc. v. Illinois Commerce Comm'n*, 40 Ill.App.3d 869, 353 N.E.2d 253, 256 (1976) ("The attack [on a voidable judgment] . . . must be direct, for the purpose of establishing by other evidence the untruthfulness of the record.") (quoting *Kavanagh v. Hamilton*, 53 Colo. 157, 125 P. 512, 515 (1912)).

Long contends that because the eviction order entered against her was procured through fraud, this judgment is void and not merely voidable. Illinois courts have long differentiated between "fraud which gives the court only colorable jurisdiction and fraud which occurred after the court acquired jurisdiction . . . . It is only fraud which gives a court colorable jurisdiction that renders a decree void." *Schwarz v. Schwarz*, 27 Ill.2d 140, 188 N.E.2d 673, 676 (1963); *see also Dawson v. Duncan*, 144 Ill.App.3d 532, 98 Ill.Dec. 778, 494 N.E.2d 900, 905 (1986). Fraud that gives the court colorable jurisdiction has been referred to as "extrinsic fraud." *See Pinnacle Arabians, Inc. v. Schmidt*, 274 Ill. App.3d 504, 210 Ill.Dec. 963, 654 N.E.2d 262, 266 (1995) (" '[E]xtrinsic fraud' . . . is that which prevents the court from acquiring jurisdiction or gives it merely colorable jurisdiction."). "The classic definition of 'extrinsic fraud' refers to situations where 'the unsuccessful party has been prevented from exhibiting fully his case . . . as by keeping him away from court . . . or where the defendant never had knowledge of the suit.' " *Falcon v. Faulkner*, 209 Ill.App.3d 1, 153 Ill.Dec. 728, 567 N.E.2d 686, 694–95 (1991) (quoting *United States v. Throckmorton*, 98 U.S. 61, 65–66, 25 L.Ed. 93 (1878)).

Based on the facts alleged in Long's complaint, the present case fits squarely within this "classic definition" of extrinsic fraud. The fraudulent statements by Eileen Kahn on behalf of Shorebank made to both the court and to Long prevented Long from exhibiting her case and circumvented a trial on the merits of her eviction. This type of fraud would have prevented the Circuit Court from acquiring jurisdiction and is the type of fraud that would render the eviction order void under Illinois law. *See Vulcan Materials Co. v. Bee Constr.*, 96 Ill.2d 159, 70 Ill.Dec. 465, 449 N.E.2d 812, 814 (1983) ("An order is rendered void not by error or impropriety but by lack of jurisdiction by the issuing court."). Both our view of Illinois law and the Circuit Court's order in Long's subsequent state court suit against the defendants confirm that Illinois courts would not afford the eviction order preclusive effect.

### III. CONCLUSION

We conclude that neither the *Rooker–Feldman* doctrine nor *res judicata* prevents Long from pursuing her complaint in federal court. The district court's judgment that the *Rooker–Feldman* doctrine precluded it from exercising subject matter jurisdiction over Long's complaint is REVERSED and this case is REMANDED for

further proceedings.[1]

---

**1.** We note that nothing in the record before us suggests that the district court should abstain from hearing this case on remand due to the ongoing and potentially duplicative state court litigation. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).