In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3785, 00-1154

John J. Manley,

Plaintiff-Appellant,

v.

City of Chicago, et al.,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97C0182--Nan R. Nolan, Magistrate Judge.

Argued September 21, 2000--Decided January 5, 2001

Before Rovner, Diane P. Wood, and Williams, Circuit
Judges.

Williams, Circuit Judge.  Appellant John J. Manley
was terminated from the Chicago Police Department
for violating several of the department's rules
and regulations. After unsuccessfully challenging
his termination in the Illinois state court
system, Manley filed suit in federal court
alleging various due process and equal protection
violations under federal law, and a state law
claim for intentional infliction of emotional
distress. The magistrate judge found that his
emotional distress claim was time-barred, a
ruling that Manley does not contest, and
dismissed his federal claims under the Rooker-
Feldman doctrine, which precludes lower federal
courts from reviewing final decisions of state
courts. We affirm.

I

In March 1994, Manley, a former captain of
police of the Chicago Police Department, was
suspended without pay for allegedly sexually
harassing female officers. Manley contested the
suspension through an evidentiary hearing, which
occurred over an eighteen-day period between
April and August, 1994. Manley was represented by
counsel throughout the hearing and subpoenaed 67
witnesses to testify on his behalf. In all, over
100 witnesses testified, and Manley's counsel

cross-examined all nine of the police department's witnesses. On January 13, 1995, the police board issued its findings that Manley violated several department rules and terminated him from employment.

On February 17, 1995, Manley sought administrative review in the Circuit Court of Cook County, Illinois. He challenged his suspension, hearing and termination on various grounds, including the denial of due process. The circuit court dismissed Manley's complaint for administrative review finding that the record supported his discharge.

Thereafter, Manley appealed the circuit court's decision to the Illinois Appellate Court. While that appeal was pending, on January 10, 1997, Manley filed suit in the Northern District of Illinois alleging violations of 42 U.S.C. sec.sec.1983 and 1985(3). He asserted, among other things, that he was denied due process during the hearing and that the department's failure to administer the police department rules and regulations without regard to his race or sex violated his right to equal protection.

Meanwhile, on December 29, 1997, the Illinois Appellate Court affirmed the circuit court's decision. The appellate court found, among other things, that there was sufficient evidence to support the board's findings and the decision to terminate Manley was supported by the record. Manley then petitioned for leave to appeal to the Illinois Supreme Court, and on October 6, 1998, his petition was denied.

After the parties consented to the jurisdiction of a magistrate judge, on September 29, 1999, Magistrate Judge Nolan dismissed Manley's federal claims for lack of subject matter jurisdiction and his emotional distress claim as being time-barred. Manley then filed a motion to alter the judgment on the grounds of attorney carelessness under Fed.R.Civ.P. 60(b). The magistrate judge denied his motion. Next, Manley filed a motion to review the bill of costs after the defendants, the prevailing party, sought to recover $3,623.75. The magistrate judge also denied this motion. On appeal, Manley challenges the dismissal for lack of subject matter jurisdiction and the denials of his motions to alter the judgment and review the bill of costs.

II
A

At the outset, Manley argues that the district court's order dismissing his case for lack of subject matter jurisdiction was not a final and

appealable order because one of the defendants was not served with process./1 Although not typically raised by an appellant, Manley's argument amounts to a challenge to our jurisdiction.

28 U.S.C. sec.1291 grants us "jurisdiction of appeals from all final decisions of the district courts of the United States. . . ." A district court's decision is final when only ministerial details remain. Dzikunoo v. McGaw YMCA, 39 F.3d 166, 167 (7th Cir. 1994). We have held that the presence of an unserved defendant does not defeat finality when an attempt by the plaintiff to serve the complaint on the unserved defendant would be untimely under Fed. R.Civ.P. 4(m) and any new complaint against the unserved defendant would be barred by the statute of limitations. See United States v. 8136 S. Dobson Street, Chicago, Illinois, 125 F.3d 1076, 1081 (7th Cir. 1997); see also Ordower v. Feldman, 826 F.2d 1569, 1573 (7th Cir. 1987) (applying Fed.R.Civ.P. 4(m)'s predecessor, Rule 4(j)). We have reasoned that when such circumstances are present the district court's order is "final" because it "effectively terminates" the plaintiff's litigation. See 8136 S. Dobson Street, 125 F.3d at 1081.

Such circumstances are present here. Rule 4(m) allows a plaintiff 120 days after the filing of the complaint to effect service upon a defendant. Manley filed this complaint on January 10, 1997. Service now is clearly untimely. Additionally, in Illinois, a two-year statute of limitations applies to claims brought under sec.sec.1983 and 1985. See Eison v. McCoy, et al., 146 F.3d 468, 470 (7th Cir. 1998); Wilson v. Giesen, 956 F.2d 738, 741 n.4 (7th Cir. 1991). Manley was discharged in January 1995, so any new complaint would be time-barred. Accordingly, the magistrate judge's dismissal "effectively terminated" Manley's litigation, and therefore, is a final decision within the meaning of 28 U.S.C. sec.1291.

B

Manley's next argument challenges the magistrate judge's dismissal of his federal claims for lack of subject matter jurisdiction. He argues that his claims should not have been dismissed under the Rooker-Feldman doctrine because they could not have been brought in state court. We review a dismissal for lack of subject matter jurisdiction de novo. Long v. Shorebank Development Corp., 182 F.3d 548, 554 (7th Cir. 1999).

The Rooker-Feldman doctrine precludes lower

federal courts from exercising jurisdiction over claims that would require them to review a final judgment of a state court. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983). Review of state court judgments is possible only in the state court system and from there to the United States Supreme Court. Garry v. Geils, 82 F.3d 1362, 1366 (7th Cir. 1996). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations. Ritter v. Ross, 992 F.2d 750, 753 (7th Cir. 1993). The key inquiry is "whether 'the district court is in essence being called upon to review the state-court decision.'" Id. at 754 (quoting Feldman, 460 U.S. at 483-84 n.16, 103 S. Ct. at 1316 n.16).

For example, in Maple Lanes, Inc. v. Messer, 186 F.3d 823 (7th Cir. 1999), we held that the plaintiff's sec.1983 claim was precluded by Rooker-Feldman. In Maple Lanes, the plaintiff alleged that it lost its liquor license due to false and defamatory remarks made by the town's sheriff. Maple Lanes unsuccessfully sought review of the revocation of its liquor license in state court. It then filed a federal complaint against the sheriff for defamation. We found that the plaintiff could not repackage its claim originally brought in state court in the form of a federal complaint for defamation because the injury that Maple Lanes complained of--the loss of its liquor license--stemmed directly from the state court judgment upholding the revocation of the license. Id. at 825.

Similarly, in GASH Associates v. Village of Rosemont, Illinois, 995 F.2d 726 (7th Cir. 1993), we found that Rooker-Feldman barred a sec.1983 suit because the injury stemmed from the state court's decision confirming the sale of property. Id. at 728-29. The plaintiff in GASH Associates, dissatisfied with the state court's confirmation of the sale of its property at a foreclosure sale, filed a sec.1983 suit against the Village of Rosemont. GASH Associates claimed that the Village's low tender at a condemnation action prior to the sale scared away rival bidders, thereby lowering the amount that the property was actually sold for at the foreclosure sale. In vacating the district court's judgment on the merits, we found that the injury that GASH Associates complained of--the sale of its property at a low price--directly stemmed from the state court judgment confirming the sale. We reasoned that "[d]ominating this case is a simple fact: GASH objects to the outcome of a judicial proceeding and filed a separate suit to get

around it." Id. at 727.

This Court's holding in Long v. Shorebank Development Corp., 182 F.3d 548 (7th Cir. 1999), is also instructive even though we ultimately determined that Rooker-Feldman did not preclude jurisdiction. In Long, the plaintiff was wrongfully evicted from her home and an eviction order was secretly and fraudulently obtained against her in state court. We found that Long's due process claim that the defendants deprived her of her property stemmed directly from the eviction order, and could not be considered separate from it because "if the proceedings in the Circuit Court resulted in her favor. . . it seems unlikely that she would have been evicted. . . ." Id. at 556. We only determined that federal jurisdiction was proper because the plaintiff did not have a reasonable opportunity to challenge the eviction in state court. Id. at 557-58.

Like the injury suffered by the plaintiffs in the cases discussed above, Manley's injury stems directly from the state court judgment upholding the decision to terminate him made by an administrative board. If we were to grant the relief that Manley requests, we would be required to review the circuit court's rulings and the appellate court's finding that his termination was supported by the record. Manley cannot circumvent the decisions of the state courts by seeking damages as opposed to reinstatement in federal court. See, e.g., Maple Lanes, 186 F.3d at 826 ("[I]f a federal court were to award the relief Maple Lanes seeks in the form of monetary damages equal to the value of the liquor license, this result would effectively reverse the state court judgment upholding the revocation of the liquor license."). The fact remains that Manley fully and adequately challenged his termination before the police board and through the Illinois court system.

In an attempt to avoid Rooker-Feldman, Manley argues that his due process claims could not have been brought in state court because they are based on "new" evidence concealed during the state court proceedings. He relies on Nesses v. Shepard, 68 F.3d 1003 (7th Cir. 1995), for the proposition that Rooker-Feldman does not bar a plaintiff's complaint when he challenges the conduct of individuals and not the action of the state court. The "new" evidence that Manley finds relevant to the constitutionality of his termination includes: 1) alleged deposition testimony of Chicago police superintendent Matt Rodriquez that the "actual" reason that he recommended Manley's suspension was for intimidating witnesses and not for sexually

harassing female officers as the charges before the police board stated; 2) internal memoranda in which Rodriguez first recommends a 60-day suspension and then a discharge due to "further review and consideration of aggravating and mitigating factors;" 3) a document from Commander John Frangella that allegedly states that the reports by an officer about Manley's behavior were "erroneous and distorted;" and 4) a petition signed by 35 female officers that allegedly states that Manley did not demean or harass female officers.

Contrary to Manley's characterizations, our review of the record does not reveal that any of the defendants concealed material evidence from Manley or that Manley was terminated for any reason other than sexual harassment. Manley may not allege that individuals engaged in fraudulent conduct simply to manufacture federal court jurisdiction without any basis in the record for the contention.

Manley also argues that his equal protection claim could not have been brought in state court because only the Illinois Department of Human Rights has jurisdiction to hear employment discrimination claims. But, Manley had a reasonable opportunity to bring his equal protection claim before the circuit court because Illinois allows a plaintiff to join constitutional claims under sec.1983 with a request for administrative review. See Davis v. City of Chicago, 53 F.3d 801, 803 (7th Cir. 1995); see also Pirela v. Village of North Aurora, 935 F.2d 909, 913-14 (7th Cir. 1991). Village of Maywood Board of Fire and Police Commissioners v. Dep't of Human Rights of State of Illinois, 695 N.E.2d 873, 880 (Ill. App. Ct. 1998), relied on by Manley, merely asserts that the Illinois Human Rights Commission has exclusive jurisdiction over civil rights actions brought under the Illinois Human Rights Act. Manley's equal protection claim is premised on a violation of the Fourteenth Amendment brought under 42 U.S.C. sec.sec.1983 and 1985, and does nothing more than mount another challenge to his termination from the police force. He cannot avoid Rooker-Feldman by simply not submitting his claim in state court. Rooker-Feldman not only bars federal re-litigation of claims argued in state court, but also bars claims that are "inextricably intertwined" with the state court judgment. See Ritter, 992 F.2d at 753.

Accordingly, Manley's effort to portray his injury--the loss of his job--as a federal civil rights violation not argued in state court is insufficient to overcome the Rooker-Feldman doctrine. Because Manley's federal claims are just an attempt to challenge the state court

system's decision to uphold his termination, they are precluded by the Rooker-Feldman doctrine and the district court properly dismissed them for lack of subject matter jurisdiction.

C

Manley also appeals the magistrate judge's refusal to alter the judgment under Fed.R.Civ.P. 60(b). We review this challenge for abuse of discretion, and are "exceptionally deferential." United States v. Golden Elevator, Inc., 27 F.3d 301, 303 (7th Cir. 1994). "An abuse of discretion can be found only where no reasonable person could agree with the district court." Nelson v. City Colleges of Chicago, 962 F.2d 754, 755 (7th Cir. 1992) (internal quotes omitted).

Rule 60(b) allows a party to seek relief from a judgment on the grounds of "mistake, inadvertence, surprise, . . . excusable neglect . . . or . . . any other reason justifying relief from the operation of the judgment." According to Manley, the magistrate judge's dismissal of his complaint should be altered to revive his federal due process and equal protection claims because his former counsel carelessly failed to notify the magistrate judge that these claims were not disposed of in state court because they could not have been raised there.

In essence, Manley's argument is a motion for reconsideration of the magistrate judge's disposal of his federal claims under Rooker-Feldman. Because we have already determined that the Rooker-Feldman doctrine bars Manley's claims aimed at overturning the state court decision to uphold his termination, the magistrate judge did not abuse her discretion in denying Manley's motion to alter the judgment.

D

Manley's final argument is that the magistrate judge erred in awarding $3,020.40 in photocopying costs to the defendants./2 "As long as statutory authority exists for a particular item to be taxed as a cost, we shall not overturn a district court's determination that the cost is reasonable and necessary, absent a clear abuse of discretion." Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble, Co., 924 F.2d 633, 642 (7th Cir. 1991). The award of costs is the type of discretionary ruling to which we give "virtually complete" deference. Estate of Borst v. O'Brien, 979 F.2d 511, 517 (7th Cir. 1992).

Almost all of Manley's challenges to the bill of costs are meritless and were sufficiently addressed in the magistrate judge's order denying

his motion to review. The one challenge that deserves attention is whether the defendants' in-house reproduction charge of $.15 per page was reasonable./3

Manley contends that the defendants' recovery should be capped at $.07 per page because that is what a local Kinko's charges. The defendants provided the magistrate judge with several explanations for why $.15 per page was appropriate in this case, among them being that some of the documents required binding. Under these circumstances, we cannot say that the magistrate judge abused her discretion in finding that $.15 per page was within the realm of legitimate costs. Accordingly, there was no error in denying Manley's motion to review the bill of costs.

III

The decision of the magistrate judge is AFFIRMED.

/1 Manley also argues that the order was not final because the district court could not have disposed of three of his federal claims as they were not before the state court. Because Manley's argument is not directed at finality, but to the merits of the district court's dismissal of his claims under the Rooker-Feldman doctrine, we will address this argument separately.

/2 Specifically, Manley challenges $360 in photocopying costs for a motion the City lost, $2,489.60 in costs from an outside print shop, and $170.80 in "extra" costs incurred for in-house copies.

3/ Manley relies on the discussion of photocopying costs in Martin v. United States, 931 F.2d 453 (7th Cir. 1991). We do not read Martin as establishing a bright-line rule that any in-house cost above what Kinko's charges is unreasonable.