**Sandra L. RICE Plaintiff**

v.

**SUNRISE EXPRESS, INC., Defendant.**

**No. 1:96–CV–0447.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Nov. 13, 2002.

Kathryn A. Brogan, Rothberg Logan & Warsco LLP, Fort Wayne, IN, Patrick L. Proctor, Fort Wayne, IN, for plaintiff.

Steven L. Jackson, Baker and Daniels, Fort Wayne, IN, Joseph J. Vogan, Perrin Rynders, Varnum Riddering Schnmidt and Howlett, Grand Rapids, MI, for defendants.

C. Erik Chickedantz, Hawk Haynie Gallmeyer and Chickedantz, Fort Wayne, IN, for mediator.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

Two separate juries have concluded that Plaintiff, Sandra Rice, was laid off from her employer, Sunrise Express, in viola-

tion of the Family Medical Leave Act of 1993 ("FMLA"). To get to this point, this action, which should have been a run-of-the-mill employment dispute, has taken over six years and in excess of 250 docket entries to resolve. The case was initially tried to a jury (who found in Plaintiff's favor), appealed to the Seventh Circuit[1] (who reversed the outcome of the first trial based upon an erroneous jury instruction), and further appealed to the Supreme Court[2] (who denied Certiorari). On July 31, 2001, this court conducted a second trial wherein a jury again concluded in Plaintiff's favor and awarded her $720.00 in lost wages. All of this legal wrangling has occurred in a factually straightforward case where the total damages sought by the Plaintiff were less than $12,000.

On July 17, 2002, the court resolved all of the post-trial motions and the undersigned directed the Clerk to enter judgment on the second jury's verdict in Plaintiff's favor and against Defendant, Sunrise USA, Inc. ("Sunrise"). The Plaintiff also recovered liquidated damages. The judgment reads as follows:

> IT IS ORDERED AND ADJUDGED that Judgment is entered on the verdict of August 2, 2001 in favor of the Plaintiff, Sandra L. Rice, in the amount of $720.00 plus statutory interest. This amount shall be doubled as liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii). Costs shall be taxed against the Defendant.

The parties were further ordered to supplement the record regarding the appropriate amount of prejudgment interest due and owing the Plaintiff and the Plaintiff was instructed to file her petition for reasonable attorney's fees and costs mindful that "a court may decrease the amount of fees that might otherwise be awarded 'in order to account for the plaintiff's limited success.'" *Memorandum of Decision and Order,* July 17, 2002, at 17(quoting *McDonnell v. Miller Oil Co., Inc.,* 134 F.3d 638, 641 (4th Cir.1998)). The court was optimistic that after receiving the court's order and the Judgment, that the parties would finally end this drawn-out affair without further court intervention. This did not happen and the court has now had to sort through more than a dozen additional filings all related to the issues of prejudgment interest, costs, and attorney's fees.

On August 2, 2002, Sunrise filed its "Motion to Alter and/or Amend Judgment" wherein it requests that the Court indicate "that the Judgment is not intended to resolve the issue of whether the Plaintiff has recovered a 'judgment' for purposes of 29 U.S.C. § 2617(a)(3), nor is it intended to preclude Defendant from seeking an award of costs or a reduction/apportionment of costs based on the fact that Defendant is a 'partially prevailing' party." (Docket # 215, pp. 1–2). Both parties have also filed their respective bills of cost, supplements regarding the amount of prejudgment interest owed to Plaintiff, and Plaintiff has submitted her request for reasonable attorney fees. It is to all of these filings that the court now turns its attention.

For the following reasons, Defendants' Motion to Alter and/or Amend the Judgment will be GRANTED and an amended judgment will be entered as discussed herein.

## DISCUSSION

### *Defendant's Motion to Alter and/or Amend Judgment*

Pursuant to Fed.R.Civ.P. 59(e), defendant has moved to alter and/or amend this

**1.** *Rice v. Sunrise Express, Inc.,* 217 F.3d 492 (7th Cir.2000).

**2.** *Rice v. Sunrise Express, Inc.,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).

court's July 18, 2002 judgment to (1) clarify that Sunrise is a partially prevailing party on the issue of damages since the jury implicitly found that Plaintiff failed to mitigate her damages; and (2) definitively determine the amount of interest and costs Plaintiff is entitled as a prevailing party on the issue of liability. As part of the first issue, Sunrise argues that any costs awarded to the Plaintiff must be offset by Sunrise's costs since it is a partially prevailing party. Sunrise also argues that the court should offset from Plaintiff's jury award the amount of costs awarded to it by the Seventh Circuit Court of Appeals. With respect to the second issue, Sunrise contends that until the amount of interest and costs is definitively determined, Plaintiff has not recovered a "judgment."

■ Beginning first with the latter argument, Fed.R.Civ.P. 54 defines a "judgment" as "any order from which an appeal lies." Likewise, Fed.R.Civ.P. 58 provides that the entry of judgment "shall not be delayed, nor the time for appeal extended, in order to tax costs or award fees..." Here, the Court entered judgment on the jury's verdict and awarded statutory interest as well as liquidated damages. Defendant is correct, however, that a court that has decided to award prejudgment interest has not entered an appealable final judgment until that amount has been calculated. *Pace Communications, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 591 (7th Cir.1994). In this case, the court ordered the parties to supplement the record with the amount of prejudgment interest due the plaintiff with the intent of modifying the judgment once that amount was established. The parties have filed their supplementary calculations and thus, the amended judgment which shall be issued pursuant to this Order will remedy any complaint that a final judgment under Fed.R.Civ.P. 54 and 58 has not been entered.

This said, the only remaining issues are the taxation of costs and the award of fees, both of which are separately appealable from the merits judgment,[3] see *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451–452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) (motion for attorney's fees does not seek alteration of the judgment, but only what is due because of judgment and so is completely collateral to merits) and *Buchanan v. Stanships, Inc.*, 485 U.S. 265, 268–269, 108 S.Ct. 1130, 99 L.Ed.2d 289 (1988) (motion for costs is wholly collateral to merits judgment).

■ Defendant also separately argues that Plaintiff does not have a "judgment" for purposes of an attorney's fee award under the FMLA because Sunrise's judgment for appellate costs (and any costs this court decided to award to Defendant as a partially prevailing party) should be offset against Plaintiff's merits judgment. Since this amount, Sunrise argues, exceeds the amount awarded to Plaintiff on the merits, it is Sunrise, not Plaintiff, that has recovered a "judgment" for purposes of awarding attorney's fees.

Sunrise's argument on this point is much ado about nothing. As this court has made clear above, the determination of costs occurs at the conclusion of a case and is an entirely separate act from a judgment on the merits. Thus, to the extent this court determines that an offset of costs is appropriate, such an offset is appropriate against the cost award ordered for the Plaintiff, not against the judgment on the merits. *See* Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, Civil 3d § 2667 ("[W]hen defendant is successful on appeal, and the appellate court awards costs of the appeal, defendant is entitled to

---

**3.** Nevertheless, the court shall address the issue of costs and fees in this Order.

execute on that costs judgment and it should not be set off against the judgment on the merits obtained by plaintiff."). Thus, Sunrise's judgment for appellate costs does not impact the validity of Plaintiff's judgment for the purpose of awarding her attorney's fees under the FMLA.

Furthermore, it is clear that Plaintiff is entitled to her reasonable attorney's fees. The fee-shifting provision of the FMLA reads as follows:

> The court in such an action in which a violation of FMLA is established shall, in addition to any judgment awarded to the Plaintiff, allow a reasonable attorneys' fee, reasonable expert witness fees, and other costs of the action to be paid by the Defendant.

29 U.S.C. § 2617(a)(3). The plain language of the fee-shifting provision of the FMLA *requires* the award of attorneys' fees in cases where a violation of the FMLA is established. Here, the jury clearly found that the Defendant violated the FMLA and this court will be entering a modified judgment on that verdict. As a result, the FMLA expressly requires the defendant to pay reasonable fees as determined by the Court.

██ Finally, Defendant contends that it is a partially prevailing party entitled to costs because the jury failed to award Rice the full amount of the damages she sought. Fed.R.Civ.P. 54(d) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs..." "As used in Rule 54(d), 'prevailing party' means a party who has obtained some relief in an action, even if that party has not sustained all of his or her claims." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1014 (7th Cir.1985) (citing *Holcomb v. United States*, 78 F.R.D. 527, 529 (E.D.Wis.1978)); *Barnett v. City of Chicago*, 1999 WL 138813, *1 (N.D.Ill.) ("For the purposes of Rule 54(d), a 'prevailing party' is the party who prevails as to the substantial part of the litigation")(citing *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir.1991)). However, under Rule 54(d)(1), it is generally acknowledged that the judgment winner is the prevailing party. *See 10 Moore's Federal Practice,* § 54.101[3] ("The cases that have interpreted the 'prevailing party' language of Rule 54(d)(1) generally state simply that the prevailing party is the party in whose favor judgment was entered, even if that judgment does not fully vindicate the litigant's position in the case.") (citing *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir.1999)) (when one party gets substantial relief it "prevails" even if it does not win on every claim; thus, plaintiff who receives $225,000 award from jury on two of four claims is prevailing party, even though defendant wins on plaintiff's two other claims). In this case, not only is Plaintiff the judgment winner but she prevailed on the central issue in her lawsuit, that is, on her claim that Defendant violated the FMLA. This is a substantial part of the litigation. The fact that her damage award was only $720.00 does not alter this conclusion. As a result, the court shall DENY Defendant's bill of costs filed under Fed.R.Civ.P. 54(d)(1).

### Calculation of Interest, Fees and Costs

Having addressed all of the preliminary issues raised in Defendant's briefs, the court turns now to the Plaintiff's request for prejudgment interest, attorney's fees and costs.

### A. Prejudgment Interest

#### 1. Availability of Prejudgment Interest

In this court's July 17, 2002 Order, the Court ordered the parties to supplement the record with respect to their calcula-

tions of prejudgment interest due to the Plaintiff. In response to this Order, Defendant argues that Plaintiff is not entitled to any prejudgment interest because the amount of prejudgment interest is a question reserved for a jury and Plaintiff failed to present the issue to the jury at trial. *See Morris v. VCW, Inc.,* 1996 WL 740544 (W.D.Mo.1996). This is the first this Court has heard of this argument despite the fact that the *Morris* decision now cited by Defendant was available to it, at the very latest, during the second trial of this action. Defendant did not raise this issue in the first trial, on appeal, or at any time during the second trial. During the second trial, Defendant failed to move for judgment as a matter of law on this issue at the close of the Plaintiff's case or at the close of evidence. Likewise, Defendant failed to propose any jury instructions addressing prejudgment interest although it aggressively disputed/proposed a host of instructions, (even some that were seemingly resolved during the first trial). Thus, in the court's view, this argument (as well as Defendant's other disputes with the calculation of prejudgment interest) are classic examples of the Defendant's attempts to leave no stone unturned in this litigation.

■ The issue of whether prejudgment interest in an FMLA case must be determined by the jury is an issue of first impression in this circuit. However, the Seventh Circuit has indicated its preference that "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay." *Fritcher v. Health Care Service Corp.,* 301 F.3d 811, 820 (7th Cir.2002) (citing, *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989)). In addition, the plain language of the FMLA contemplates that a plaintiff is entitled to recover interest. *See* 29 U.S.C. 2617(a)(1)(A).

Given the Seventh Circuit's preference for awarding prejudgment interest, the court shall award Plaintiff prejudgment interest.

## 2. Calculation of Prejudgment Interest

The FMLA states that Plaintiff is entitled to interest "calculated at the prevailing rate." 29 U.S.C. § 2617(a)(1)(ii). The statute does not further define the prevailing rate.

Initially, Plaintiff claimed that she was owed $241.29 using the average prevailing rate of 4.895% which is the average monthly rate on 52–week Treasury bills with interest calculated on a monthly basis. This rate was the same rate utilized for calculating post-judgment interest. Defendant's initial position with respect to prejudgment interest was two-fold. Defendant calculated prejudgment interest at a prevailing rate of 4.89% (again using the post-judgment rate of the 52–week Treasury bill) and determined the amount owed to Plaintiff to be $224.77. Plaintiff's initial calculation ran from October 1996 until the date of Judgment July 18, 2002. Defendant's time frame ran from March 1996 (interestingly, this is a date 7 months earlier than the Plaintiff's calculation) through the date of Judgment. The total difference between these two initial calculations was $16.52.

Upon this court's review of the parties' calculations, the undersigned discovered that the parties had erroneously calculated prejudgment interest using the post-judgment interest rate. Indeed, the Seventh Circuit provides that courts must use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in "refined rate-setting" directed at determining a more accurate market rate for interest. *Cement Division, National Gypsum Co. v. City of Milwaukee,*

144 F.3d 1111, 1114 (7th Cir.1998); *In re Oil Spill by the Amoco Cadiz,* 954 F.2d 1279, 1332 (7th Cir.1992); *McKelvy v. Metal Container Corp.,* 854 F.2d 448, 454 (11th Cir.1988) (holding that the "interest rate for prejudgment interest on backpay awards under Title VII depends on the IRS prime rates calculated in accordance with 28 U.S.C. § 1961."). The "prime rate" is the rate charged on short term, unsecured loans to creditworthy borrowers. See *Fritcher v. Health Care Serv. Corp.,* No. 01–4141, 2002 WL 1949689, at *6 (7th Cir. Aug.23, 2002); *Gorenstein Enters., Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436–37 (7th Cir.1989).[4] The Seventh Circuit has also made clear that "to set aside this practice and award something other than the prime rate is an abuse of discretion, unless the district court engages in such a refined calculation." *First Nat. Bank of Chicago v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir.1999); see also, *Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269 (7th Cir.1993) (Trial judge erred in applying postjudgment interest rate statute to determine prejudgment interest in age discrimination suit, but error was harmless to employer, as judge's use of Treasury bill rate resulted in use of lower rate than prime rate).[5]

In light of this case authority, the court ordered the parties to further supplement the record as to the calculation of prejudgment interest and, perhaps, attempt to stipulate, the amount of prejudgment interest due the Plaintiff. Again, as has been par for the course, the Court (and the Plaintiff) met with resistance from the Defendant. Defendant continues to disagree that the appropriate rate is the prime rate and remains steadfast in its position that Plaintiff is entitled to no more than $224.77 in interest. However, to resolve the issue, Defendant has agreed to split the difference between this figure and Plaintiff's figure of $416.44 and stipulate to prejudgment interest totaling $321.50.[6] Accordingly, the Court shall accept this stipulation and award Plaintiff $321.50 in prejudgment interest.

In sum, Plaintiff is entitled to $720.00 in lost wages plus $321.50 in prejudgment interest, for a total of $1,041.50. This amount shall be doubled as liquidated damages pursuant to this Court's Order of July 17, 2002. The total owed to Plaintiff, exclusive of fees and costs, is $2,083.00.

### B. *Attorney's Fee*

Plaintiff requests attorney fees in excess of $162,000.00 for 1,231.30 hours of attorney work expended. As noted, the FMLA

---

4. In *Gorenstein,* the Seventh Circuit held that the post judgment interest rate for federal cases set forth in 28 U.S.C. § 1961 (which appears to be the rate the parties in this case utilized) is too low in the case of prejudgment interest, because there is no default risk with Treasury bills. The Court stated "We have chosen the prime rate for convenience...We do not want to straitjacket the district judges but we do want to caution them against the danger of setting prejudgment interest rates too low by neglecting the risk, often nontrivial, of default." *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d at 436 –437.

5. With respect to whether use of the prime rate is appropriate here, at least one court has utilized the average prime rate to award prejudgment interest to a plaintiff in an FMLA case. See *George v. GTE Directories Corp.,* 114 F.Supp.2d 1281, 1300 (M.D.Fla.2000) (utilizing the average IRS prime rate from date of discharge through date of judgment).

6. Even this stipulation was difficult for the parties to resolve. On the date the supplemental filings were due, Plaintiff represented to the court in her filing that "Defendant is unwilling to stipulate to the attached interest figure [calculated at the prime rate] and instead, proposed that the parties split the difference between Plaintiff and Defendant's earlier interest calculations, both of which erroneously used the post judgment rate." (Docket # 257, at p. 2).

permits a Plaintiff to recover a reasonable attorney's fee from the Defendant. 29 U.S.C.A. § 2617(a)(3). Sunrise does not dispute that this statutory language mandates an award of fees when the plaintiff receives a judgment in an action under the FMLA.[7] Rather, Sunrise contests the amount of the fees requested, arguing that the amount requested is unreasonable in light of the fact that Plaintiff received only $720.00 of the nearly $12,000 she was seeking.

■■■ To determine reasonable attorneys' fees, the court first calculates the "lodestar" amount by multiplying the number of hours reasonably expended by the appropriate hourly rates for attorneys. See *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "[T]he district court should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999) (citing *Hensley*, 461 U.S. at 433–35, 440, 103 S.Ct. 1933). While the lodestar can then be adjusted in light of factors such as the results obtained, *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933, "there is ... a strong presumption that the lodestar figure represents a reasonable fee." *Quaratino*, 166 F.3d at 425 (citation and internal quotation omitted). Accordingly, the court turns first to a calculation of the lodestar.

### Calculation of the Lodestar

■■■ A "reasonable" hourly rate should reflect the "market rate" for the attorney's services, *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996); the market rate is "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir.1999). "The burden of proving the 'market rate' is on the fee applicant; however, once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Id.* at 554–55 (internal citations omitted).

■■■ The reasonable hourly rates proposed by Plaintiff for the attorneys working on Plaintiff's case vary depending upon experience from $120.00 per hour to $210.00 per hour.[8] These rates also reflect the fact that during the course of this drawn-out litigation, the Plaintiff's attorneys' rates have changed to reflect the particular attorney's degree of experience. To demonstrate that these rates are reasonable market rates, Plaintiff submits affidavits from other local practitioners who verify that the rates charged are within the applicable market rate in the Fort Wayne community. *See id.* at 556 ("[T]he fee applicant can meet her initial burden "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases.").

Sunrise has not taken issue with the hourly rates charged by Plaintiff's counsel or presented any rebuttal evidence suggesting that these amounts exceed the market rate. *See Connolly*, 177 F.3d at 597 (party opposing fee award demonstrated that hourly rates charged were unreasonable by submitting multiple affidavits of attorneys with similar experience stating that rates "greatly exceeded the rates those attorneys would ordinarily charge in

---

7. Defendant does make the argument, discussed *infra*, that Plaintiff has not recovered a judgment so as to be entitled to attorney's fees under the FMLA.

8. Plaintiff utilized the services of seven different attorneys throughout the course of this litigation.

similar cases."). Indeed, this court has reviewed the hourly rates charged by Plaintiff's counsel and find them to be reasonable based upon the prevailing market rates in the community for similar work by attorneys of similar experience.[9] Accordingly, the Court accepts these rates as reasonable hourly rates for the attorneys working on Plaintiff's case.

■ With respect to the number of hours expended on the case, hours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute. Thus, plaintiff's counsel should exclude from his or her request excessive, redundant or otherwise unnecessary expenses; in the event counsel does not exercise such judgment, the district court may reduce the number of hours accordingly. See *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

■ Lead counsel on Plaintiff's case represents that she has "exercised billing judgment" and removed all hours that were excessive or redundant. Again, Sunrise has not taken issue with any particular hours expended by Plaintiff's counsel or claimed that those hours were excessive or redundant. This court has independently reviewed the fee petition submitted by Plaintiff and finds that all of the hours listed are directly and reasonably related to the litigation and the resolution of the Plaintiff's claim. Similarly, although a great deal of work has been expended on this case by the various attorneys, the petition reflects numerous hours have been designated "no charge" or reduced by Plaintiff's counsel. Thus, this court is satisfied that the hours claimed by Plaintiff's counsel are hours that would be properly charged to a client in the private sector. As a result, the court shall accept that Plaintiffs' counsel has spent 1,231 hours on matters directly related to this litigation.

Accordingly, the lodestar amount is calculated as follows:

| ATTORNEY | HOURS EXPENDED | HOURLY RATE | TOTAL |
|---|---|---|---|
| Kathryn Brogan | 368.80 | $160—$210 [10] | $ 62,036.00 |
| Patrick Proctor | 722.40 | $120—$175 | $ 91,628.50 |
| T. Russell Strunk, Jr. | 2.4 | $160 | $ 384.00 |
| Theodore T. Storer | 3.4 | $120 | $ 408.00 |
| R. Brian Stiles | 30 | variable | $ 1,155.50 |
| David E. Bailey | 14 | variable | $ 1,680.00 |
| Peggy A. Scheckel | 66.50 | variable | $ 4,787.50 |
| LODESTAR | | | $162,079.50 |

### *Plaintiff's Success on the Merits*

9. Lead counsel, Kathryn Brogan, has been a partner specializing in employment discrimination litigation at the law firm Rothberg, Logan & Warsco (and its predecessors Warsco, Brogan & Strunk and Warsco & Brogan), since 1992. She has practiced law for 21 years, in various capacities, and has throughout the course of her private practice, represented numerous clients in this court.

Co-counsel, Patrick Proctor, has been practicing with Rothberg, Logan & Warsco (and its predecessors Warsco, Brogan & Strunk

■ Having calculated the lodestar, and Warsco & Brogan), since 1993 and also specializes in employment litigation. He has been intimately involved in both trials, the appeal and the discovery phases of this litigation. He also represents clients regularly in this court.

10. Brogan's rate was $160.00 through January 1999; $175.00 through July 2001; $185.00 during the second trial and $210.00 currently.

the court now turns to Sunrise's principle contention, that is that the attorney's fee request is simply not commensurate with the $720.00 recovery obtained after the second trial.[11] (Docket # 227, at 5, citing to *Farrar*, 506 U.S. at 114, 113 S.Ct. 566).

Plaintiff seeks in excess of $162,000 in attorney's fees for litigating this case through the second trial. As a gesture of goodwill, Plaintiff's counsel has voluntarily agreed to reduce the fee award by 20% to account for the Plaintiff's modest recovery at trial. Defendant, however, believes a 20% reduction is entirely too little given that Plaintiff recovered only 6% of what she was seeking.

The Supreme Court has recognized, "the most critical factor" in calculating a reasonable fee award "is the degree of success obtained," and when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933; see *Farrar v. Hobby*, 506 U.S. 103, 114–15, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494 (1992).[12] Thus, even when an award of attorneys' fees is mandatory, as is the case here, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success. *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir.1998).

In *Farrar*, the Supreme Court strongly criticized a district court's award of over $300,000 in attorney's fees and expenses where plaintiffs sued six defendants and recovered $1 from "the least culpable defendant and nothing from the rest." 506 U.S. at 121, 113 S.Ct. 566. In such a circumstance, the Court stated that "the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. 566. This said, however, the Seventh Circuit has "repeatedly rejected the contention that a district court should look to the percentage of the plaintiff's initial demand actually recovered through settlement or judgment and then mechanically reduce the attorney's fee award by a proportionate amount." *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir.1999)(citing *Sheehan v. Donlen Corp.*, 173 F.3d 1039 (7th Cir.1999); *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir.1994)); *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir.1992)). Indeed, the Seventh Circuit has never held that an attorney's fee award is unreasonable "simply because it exceeds by some multiple the amount recovered by the plaintiff . . ." *Id.* Rather, the Seventh Cir-

---

**11.** Defendant classifies Plaintiff's damage award as "nominal." However, nominal damages are typically awarded where the plaintiff has proved that his rights were violated but has not proved actual damages. In most cases, the nominal award is in the amount of $1.00 for compensatory damages. See, e.g., *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); see also *Morimanno v. Taco Bell*, 979 F.Supp. 791 (N.D.Ind.1997) (discussing nominal versus *de minimis* damages). Here, Plaintiff proved actual damages for the Defendant's FMLA violation., albeit, an amount less than she sought.

**12.** "[L]ack of monetary success, however, does not require a fee reduction." *Baird v.*

*Boies, Schiller & Flexner LLP*, 2002 WL 1988198 (S.D.N.Y. August 28, 2002). Rather, the degree of monetary success (or lack thereof) is only one factor to be considered. Courts must also consider whether the plaintiff has achieved some other measure of success. "A civil rights plaintiff may obtain important equitable or declaratory relief, or he or she may achieve some other non-monetary vindication of his or her civil rights, by, for example, establishing the violation of an important civil or constitutional right. These non-monetary measures of success must be considered as well in setting the amount of a fee award." *Id.*

cuit has made it clear that it rejects the application of mechanical rules "which call on a court simply to compare the amount demanded and the amount recovered because federal antidiscrimination law vindicates important public interests which may not be reflected in the size of a particular recovery." *Id.*(citing cases). For this reason the Seventh Circuit applies the test derived from Justice O'Connor's concurrence in *Farrar,* 506 U.S. at 121–122, 113 S.Ct. 566. Under this test, "we look at the difference between the judgment recovered and the recovery sought, the significance of the legal issues on which the plaintiff prevailed and, finally, the public purpose served by the litigation." *Connolly,* 177 F.3d at 597(citing *Cartwright v. Stamper,* 7 F.3d 106, 109 (7th Cir.1993). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Bankston v. State of Illinois,* 60 F.3d 1249, 1256 (7th Cir.1995).

Plaintiff's total damage claim in both trials did not exceed $12,000 and Plaintiff recovered only $720.00 on her claim from the second jury. This recovery was based on the second jury's conclusion that Plaintiff failed to mitigate her damages. Defendant expends great effort pointing out that Plaintiff was only seeking $12,000 even under a "best case" scenario and thus, "it was simply not reasonable to expend 1,231.30 hours of attorney time" (Docket # 227 at p. 6) on what defendant believes was a small case. In this court's opinion this argument is absolutely correct, but not for the reasons anticipated by the Defendant.

■ Attorney's fee awards in civil rights cases are designed "to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Riverside v. Rivera,* 477 U.S. 561,

578, 106 S.Ct. 2686, 2696, 91 L.Ed.2d 466 (1986) (referencing fee awards under 42 U.S.C. § 1988 and quoting *Kerr v. Quinn,* 692 F.2d 875, 877 (2d Cir.1982)). Although this is the general purpose of such statutes, courts that have reduced attorney's fee awards or denied them in their entirety based upon the Plaintiff's limited recovery have done so under the theory that the Plaintiff was "aiming high and fell far short." *See Hyde v. Small,* 123 F.3d 583, 585–86 (7th Cir.1997) (citing *Farrar,* 506 U.S. at 114, 113 S.Ct. 566, *Pino v. Locascio,* 101 F.3d 235, 238 (2d Cir.1996); *Romberg v. Nichols,* 48 F.3d 453, 455 (9th Cir.1995)). In such cases, the Plaintiffs are penalized for "inflicting heavy costs on [their] opponent[s] and wasting the time of the court" on a case that never should have been brought in the first place. *See Hyde,* 123 F.3d at 586. Indeed, exaggerated claims are disfavored because they "impede settlement and consume scarce judicial resources," *Cole v. Wodziak,* 169 F.3d 486, 489 (7th Cir.1999).

In *Hyde v. Small,* 123 F.3d 583 (7th Cir.1997), the plaintiff, after a three day jury trial, prevailed in a suit against police officers for false arrest. Hyde suffered no tangible injury but was awarded $500 in compensatory damages and nothing in punitive damages. The magistrate judge then denied Hyde's request for over $16,000 in attorney's fees on the ground that the damages awarded by the jury were minimal. In reversing this decision, Judge Posner explained the importance of fee shifting provisions in federal statutes:

It is impossible, unless there is an expectation of a fee award (and often not then), to interest a competent lawyer in bringing a suit in federal court to recover a small amount of damages unless the plaintiff is a rich person willing to finance the suit out of his own pocket rather than by means of a contingent-fee contract, the normal way in which tort

suits are financed in this country...[T]he mere fact that a suit does not result in a large award of damages or the breaking of new constitutional ground is not a good ground for refusing to award any attorneys' fees....[T]he brevity of the trial and the fact that Hyde's lawyer did not ask the jury to award a specific amount suggest that he was not aiming for the big bucks. The defendants could have smoked him out by making a modest settlement offer; had Hyde refused it and gone on to recover less at trial than the defendants had offered, he would have been barred from obtaining any attorney's fees that he incurred after the offer.... When the civil rights plaintiff aims small, and obtains an amount that is significant in relation to that aim (it need not reach the target), he is prima facie entitled to an award of fees even if the case establishes no precedent. There is no minimum amount in controversy required in civil rights cases and no federal small claims court, so it is no abuse of the federal district courts to bring the kind of suit that Hyde did, and therefore he should not be disqualified from an award of attorneys' fees without which such a case would never be brought.

*Id.* at 585–86.

The *Hyde* decision clearly recognizes that, "[i]f the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers.'" *City of Riverside v. Rivera,* 477 U.S. 561, 575, 106 S.Ct. 2686, 91 L.Ed.2d 466 (plurality) (quoting 122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney)). Thus, *Hyde* stands for the general proposition that a plaintiff who suffers a slight injury and does not over-claim in court is entitled to a compensatory fee even if that fee exceeds the amount of her damages.

In this case, Rice did not make an inflated demand or exaggerate her claim. Unlike in *Farrar,* where the plaintiff requested in excess of 2 million dollars, dragged six defendants through a long trial only to obtain, in the end, a damages award of $1 against one of the defendants and nothing against the others, the present case is not a case where the Plaintiff "asked for a bundle and got a pittance" *Farrar,* at 120, 113 S.Ct. 566 (O'Connor, J., concurring).

Throughout this case, Plaintiff has maintained the reasonable position that her FMLA claim was only worth approximately $12,000. In fact, the first jury agreed and awarded Plaintiff all of the damages she sought further demonstrating the reasonableness of the Plaintiff's demand. Plaintiff clearly never had her sights set on a sky high recovery like the *Farrar* plaintiff. Moreover, Plaintiff's modest claim was initially tried to a jury in two days (expending few judicial resources) and, as the court has already noted, she received a verdict for the entire amount of compensatory damages she sought. From this verdict Plaintiff received substantial vindication of her federally protected rights not, as Defendant would have the court believe, simply the moral satisfaction that a federal court jury concluded that the her rights had been violated. A second trial yielded similar results save a lower damage award. In this court's mind, the difference in damages awarded in the two trials is trivial as it relates to plaintiff's attorney's fee request[13] since

---

13. The lower damage award in the second trial was not a reflection on the reasonableness or validity of Plaintiff's claim. Rather, it simply reflects the jury's implicit finding that the Plaintiff failed to mitigate her damages. As a result, the Plaintiff's recovery in the second trial does not suggest that she over-claimed in court.

there is a strong public interest in encouraging victims of even relatively minor violations to bring suit. *See Hyde*, 123 F.3d at 585 ("the cumulative effect of petty violations of the Constitution arising out of the interactions between the police (and other public officers) and the citizenry on the values protected by the Constitution may not be petty...."). Two juries have concluded that the Defendant violated Plaintiff's rights and awarded her, in the first instance, all that she sought, and, in the second instance, a portion of what she sought, and therefore, this court does not believe that this is the type of case that calls for a dramatic reduction in the plaintiff's fee award based on the theory of limited success.

This argument is further bolstered by the fact that this case involved significant legal issues and served a public purpose. Unlike the run of the mill employment discrimination case which "does not result in ground-breaking conclusions of law," see *Pino v. Raymond Locascio*, 101 F.3d 235, 239 (2d Cir.1996), the legal issues implicated by this case involved a critical question of law. During the first trial, the court wrestled with a jury instruction as to which party bears the burden of proof in an FMLA case. The law was uncertain on this point given that the FMLA was a newly enacted statute at the time this case began. The appeal of the first trial in this case yielded the answer to this question of law in this circuit and set precedent for other similar FMLA cases. Thus, a good portion of the hours expended by Plaintiff's counsel served a public purpose and have aided FMLA litigation on a broad scale.

Finally, the court would be remiss if it failed to mention the part Defendant played in driving up the cost of this litigation. Defendant, as it is entitled to do, chose to aggressively defend this case based on principle through two trials and an appeal. This was Defendant's choice but, in taking this route, Defendant's litigious posture placed heightened demands on Plaintiff's counsel, increasing the amount of time counsel needed to spend to defend Plaintiff's rights and causing Plaintiff to incur an increasing amount of fees to vindicate what even Defendant acknowledges was a small claim. Indeed, the Defendant built a litigious mountain of paperwork (spanning 7 volumes and in excess of 250 docket entries) out of what appears, even in retrospect, a legal molehill.

 Further, Defendant could have chosen options which would have substantially limited its own exposure to the Plaintiff's rising fees if it so desired. Defendant, for instance, chose not to make an offer of judgment pursuant to Fed.R.Civ.P. 68 in either trial. Likewise, while the court actively encouraged the parties to explore avenues of settlement, Defendant repeatedly balked at the prospect of settling this case.[14] Thus, the Defendant

---

14. Defendant represents in its brief that "Plaintiff never made an offer of settlement that was anywhere close to what she recovered in this case. Had she asked at the outset to resolve this case for $720, which is what the jury ultimately concluded the case was worth, there is little likelihood that the parties and the Court would have [sic] spent the last six years trying to bring this case to resolution." There are several problems with this argument. First, the FMLA entitles the Plaintiff to lost wages, which she estimated at $12,000 throughout this entire case, as well as attorney's fees. Thus, any settlement demand by Plaintiff would certainly include a sum deemed by Plaintiff to be a reasonable disposition of those two items of recovery.

Second, Defendant's argument fails to consider that lawsuits often settle for nuisance value, meaning "a compromise for less than the costs of defense." *Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 976 (7th Cir.1998). Here, the anticipated cost of defense for the first trial alone certainly would have exceeded the $720 Plaintiff received in the second trial.

played a significant roll in running up the Plaintiff's legal tab and now has the audacity to suggest that the bill is too high.[15] *See Johnson v. Kakvand,* 192 F.3d 656, 661–662 (7th Cir.1999) ("[I]t is a known fact that a party's uncooperativeness with pretrial proceedings will increase the amount of time that the opposing attorney must devote to the case, an increase that will then be reflected in the petition for attorneys' fees.").[16] Under these circumstances, the court does not find the fee requested to be excessive.

Accordingly, having assessed the difficulty, stakes and outcome of this case as *Farrar* instructs, the Court believes that the voluntary reduction in the lodestar amount by 20% suggested by Plaintiff is a reasonable disposition of fees in this case. Thus, the court shall award Plaintiff $129,663.60 in attorney's fees taking into account the 20% reduction.

### b. Costs

■ Rule 54(d) creates a presumption favoring the award of costs to the prevailing party. *Coyne–Delany Co., Inc. v. Capital Development Bd.,* 717 F.2d 385, 390 (7th Cir.1983). However, district courts possess wide discretion in determining whether expenses claimed by the prevailing party are actually taxable as costs. *Deimer v. Cincinnati Sub–Zero Products, Inc.,* 58 F.3d 341, 345 (7th Cir.1995). This court must review a prevailing party's bill of costs in scrupulous detail. As the Supreme Court has explained, Rule 54(d) does not give a court "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur ... [I]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

■ Rule 54(d) works in tandem with 28 U.S.C. § 1920 and "cannot be stretched beyond the parameters defined in section 1920" to encompass charges "unenumerated in [section 1920]." *In re San Juan Dupont Plaza Hotel Fire Litigation,* 994 F.2d 956, 964 (1st Cir.1993). The taxable costs which may be recovered as specified in 28 U.S.C. § 1920 include: (1) fees of the clerk; (2) fees for transcripts; (3) fees for printing and witnesses; (4) fees for copies of papers "necessarily" used in the case; (5) docketing fees; and (6) compensation of court appointed experts and interpreters. 28 U.S.C. § 1920. The court shall address each of these categories *seriatim* keeping in mind the Seventh Circuit's mandate that the district court judges "provide at least a modicum of explanation when entering an award of costs." *Cengr v. Fusibond Piping Systems, Inc.,* 135 F.3d 445, 455 (7th Cir.1998); See also, e.g., *Weeks v. Samsung Heavy Industries Company, Ltd.,* 126 F.3d 926, 946 (7th Cir.1997) (noting

---

**15.** In contrast to Defendant's litigiousness, at various times during the litigation, Plaintiff has conceded certain issues to avoid lengthy legal disputes and aid the court in resolving the case.

**16.** The court is especially mindful that awards of litigation expenses and attorney fees may often have a somewhat punitive effect on the party against whom they are awarded. Yet, to punish or penalize is not their purpose, see *Simpson v. Sheahan,* 104 F.3d 998, 1003 (7th Cir.1997) ("it is clear that an award of attorney's fees is not intended to punish defen-

dants"), and to do so in this case is not the court's intention. Rather, in those circumstances under which such awards are authorized by law, the purpose of an attorney's fee award is to compensate an injured party, in order that such parties are not further injured by the cost incurred as a result of the necessity of seeking legal redress for their legitimate grievances. *See Riverside,* 477 U.S. at 578, 106 S.Ct. 2686. Here, while the court recounts instances of Defendant's aggressiveness in this litigation, the court does so in order to place in context the award of attorney's fees to Plaintiff.

that district court's order regarding costs "might have been more clear had [it] specifically itemized those costs and addressed the [plaintiff's] arguments"); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1585 (7th Cir.1990) (expressing "concern over district court orders that insufficiently detail the court's reasons for denying costs").

### 1. *Fees of the Clerk*

■ Plaintiff requests $420.00 reimbursement for fees of the Clerk which include fees paid to both the District Court ($120.00) and the United States Supreme Court ($300.00). Defendant objects to the Supreme Court fee being taxed as a cost because Plaintiff did not prevail at the Supreme Court. However, Plaintiff still remains entitled to these fees because she is the ultimate prevailing party on her FMLA claim. Accordingly, Plaintiff is entitled to $420.00 for fees of the Clerk.

### 2. *Fees for service of summons and subpoena*

Plaintiff also requests fees of $2.98 for service of summons and subpoena. Defendant does not object to this cost and the court finds the amount requested reasonable. Accordingly, Plaintiff shall recover $2.98.

### 3. *Fees of the Court Reporter for all or any part of the transcript necessarily obtained for use in the case*

■ Plaintiff seeks reimbursement of $4,015.10 for transcripts to which Defendant objects on the basis that the transcripts were not necessarily obtained for use in the case. A large portion of these costs ($1,744.10) were incurred for depositions taken prior to the first trial. Defendant does not appear to take issue with

these costs since all of the deponents appeared as witnesses in the first trial and likewise in the second. Thus, Plaintiff shall be entitled to costs of $1,744.10 for the depositions of Plaintiff, Betty Keiser, Joseph Ryan, Christy Huntington, and James Furry.

In further support of her request, Plaintiff argues that at least three of the transcripts (totaling $1,101.00) involved various conferences held by the undersigned in which there was discussion of Defendant Gainey Corporation. These transcripts, Plaintiff argues, were necessary to respond to Defendant's jurisdictional argument on appeal that Gainey Corporation had not consented to the Magistrate prior to the first trial. Plaintiff further argues that a charge of $1092.00 [17] incurred for transcripts of the second trial were necessary for Plaintiff to respond to Defendant's post-trial motion for judgment on the evidence. Indeed, this court counseled the parties to obtain a full transcript so that they could adequately address the Defendant's post-trial motion. Because the transcripts were necessary to resolve legal issues and arguments made by Defendant in this case, the court shall award all of these transcription costs.

■ Finally, Defendant objects to a request for costs of a daily transcript ($78.00) of Betty Keiser's testimony that Plaintiff used in preparation of her closing argument. It is within the discretion of the trial court to tax costs for a daily transcript. *Farmer v. Arabian American Oil Company*, 379 U.S. 227, 234, 85 S.Ct. 411, 416, 13 L.Ed.2d 248, 253–54. In this case, Keiser's testimony and credibility as to the reason Plaintiff was terminated were critical to Plaintiff's claim and a focus of the Plaintiff's closing argument to the

---

17. The court reporter actually split the cost for the complete trial transcript of the second trial between the parties.

jury. As a result, the court shall award Plaintiff the cost for Keiser's transcript.

In total, Plaintiff is entitled to $4,015.10 in transcript costs.

### 4. Fees and Disbursements for Printing

■ Plaintiff also seeks $1,656.98 for printing costs which include the enlargement of exhibits used at trial ($172.73) and the costs of printing Supreme Court briefs ($1,484.25). Defendant objects to both of these charges.

■ Costs for enlargements and exhibits are recoverable when they are an essential aid to understanding an issue in the case. *Antonson v. United Armored Services, Inc.*, 2002 WL 908424, *2 (N.D.Ill. May 6, 2002); *Board of Trustees v. Underwood Neuhaus & Company, Inc.*, 1995 WL 38964, *2 (N.D.Ill.1995)(holding that the costs for enlargement of exhibits were taxable because the exhibits were necessary to aid the jury in understanding complex securities issues and calculations). There is nothing before the Court to indicate such an essential need in this case. This cost is therefore denied as unnecessary.

■ As for the costs of printing Supreme Court briefs, these costs are not taxable, *see* U.S.Sup.Ct.R. 43 ( "the expenses of printing briefs . . . are not taxable."); *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440 (7th Cir.1994) (holding that a party should not be able to "achieve an end run around [Supreme Court Rule 43] by seeking those costs in the district court."). Thus, the Plaintiff is not entitled to the cost of printing her Supreme Court briefs.

### 4. Witness Fees

Costs under Rule 54(d)(1) and 28 U.S.C. § 1920 also include witness fees. *See* 28 U.S.C. § 1920(3). In addition, 28 U.S.C. § 1821 limits the witness fee authorized by § 1920 to forty dollars per day, provides that a witness who travels by common carrier be paid "the actual expenses of [that] travel," and requires that a witness whose overnight stay is required be given a "subsistence allowance" not to exceed the maximum per diem allowance prescribed by the Administrator of General Services. See 28 U.S.C. § 1821(b)-(d). Plaintiff submits a request for reimbursement of $216.12. for five witnesses ($200.00) as well as mileage reimbursement ($16.12 for 52 miles) for one witness. Defendant does not object to these costs and the amounts are within the limits of 28 U.S.C. § 1821. Thus, Plaintiff is entitled to $216.12 for witness fees.

### 5. Photocopying Expenses

■ Copying costs are recoverable under 28 U.S.C. § 1920(4) if the copies were reasonably necessary for use in the case. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir.1991). Extra copies of filed papers are not necessary, but are for the convenience of the attorneys, and the cost of extra copies is not taxable. *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir.1994). Plaintiff requests reimbursement for $2,651.19[18] for photocopies. Defendant objects to these costs claiming that Plaintiff has not adequately documented why the copies were reasonably necessary in the case. Defendant also objects to the per page charge for copies.[19]

■ The Plaintiff—not the district court—has the burden to prove that the

18. This figure includes $964.75 for copies from the initial bill of costs filed in this case on December 3, 1997

19. This objection was made by Defendant in response to Plaintiff's initial bill of costs filed on December 3, 1997.

copies for which she seeks reimbursement were necessarily obtained for use in this case by pointing to the existing record or supplementing it with additional proof, and the amount of their request must have been reasonable. See *M.T.Bonk,* 945 F.2d at 1410. Although Plaintiff "is not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," it "is required to provide the best break down obtainable from retained records." *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 643 (7th Cir.1991).

▪ Here, Plaintiff asserts that the copies were made of "depositions, motions, pleadings, briefs, exhibits, etc all of which were either served upon the court, opposing counsel, or provided to Rice, and used in the litigation." (Docket # 231, p. 14). However, the only documentation supplied to support this assertion is a generic statement showing that copying charges were incurred. There is no itemization to show what items were copied or for what purpose they were copied. As a result, the court shall reduce the number of copies by 20% to account for the possibility that some copies were made for the convenience of counsel and the parties. Accordingly, Plaintiff shall be reimbursed for 9,832 copies.

▪ As to the per page charges, Plaintiff seeks reimbursement for $8,432 copies at $.20 per page and 3,859 at $.25 per page. Seventh Circuit precedent instructs that charges for in-house copying may not exceed the charges of an outside printshop, unless the party can demonstrate why the higher in-house charge is appropriate. *Manley v. City of Chicago,* 236 F.3d 392, 398 (7th Cir.2001); *Martin v. United States,* 931 F.2d 453, 455 (7th Cir. 1991). The Court notes that local print shops charge $0.09 to $0.10 per page for standard photocopying and finds that $0.10 per page is a reasonable charge for in-house copying. Plaintiff provides no basis to support why a $0.20 charge is reasonable for some documents and a $.25 charge is reasonable for others. Accordingly, the Plaintiff shall recover for 9,832 copies at $.10 per page for a total of $983.20.

### 6. *Miscellaneous Requests*

▪ Plaintiff seeks $120.12 for the cost of mediation expenses for the services of mediator, C. Erik Chickedantz. Mediation expenses are not compensable under 28 U.S.C. § 1920 as "costs," *see E.g., Brisco–Wade v. Carnahan,* 297 F.3d 781, 782 (8th Cir.2002) (§ 1920 does not list mediation fees as taxable costs); *Kansas v. Deffenbaugh Indus., Inc.,* 154 F.R.D. 269, 270 (D.Kan.1994). Accordingly, this amount is denied.

### 7. *Offset of Defendant's Judgment dated July 31, 2000*

Defendant seeks to offset from Plaintiff's cost award, it's judgment for appellate costs of $4,331.00 entered on July 31, 2000. This request shall be granted and there shall be an offset of Defendant's appellate costs from the Plaintiff's total cost recovery.

### RECAPITULATION and CONCLUSION

Having set forth above the Plaintiffs' entitlement to interest, fees, and costs, the court herein shall summarize Plaintiffs' award:

| | |
|---|---|
| Jury Verdict, Interest and Liquidated Damages | $ 2,083.00 |
| Reasonable Attorney's Fee | $ 129,663.60 |
| **Costs** | |
| Fees of the Clerk | $ 420.00 |

| | | |
|---|---|---|
| Fees for Service of Summons and Subpoena | $ | 2.98 |
| Fees for Transcripts | $ | 4,015.10 |
| Fees and Disbursements for Printing | | 0.00 |
| Fees for Witnesses | $ | 216.12 |
| Fees for Photocopies | $ | 983.20 |
| Mediation Fees | $ | 0.00 |
| **Total Costs Awarded to Plaintiff** | $ | **5,637.40** |
| Offset for Defendant's Costs Awarded on Appeal (-) | $ | 4,331.00 |
| **Costs Awarded to Plaintiff after Offset** | $ | **1,306.40** |

**Total Award to Plaintiff** $ 133,053.00

Based on the foregoing, Defendant's Motion to Alter/Amend Judgment is GRANTED. The Clerk shall enter an amended judgment reflecting that Judgment is entered on the verdict of August 2, 2001 in favor of the Plaintiff, Sandra L. Rice, in the amount of $2,083.00, attorney's fees of $129,663.60, and costs of $1,306.40. To the extent that this Judgment offsets the Defendant's Judgment for appellate costs entered on July 31, 2000, that Judgment is VACATED. Defendant's Bill of Costs is DENIED.